**WILKES COUNTY, GEORGIA et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**WILKES COUNTY SCHOOL DISTRICT et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 76–1045 and 76–1046.**

United States District Court, District of Columbia, Civil Division.

April 20, 1978.

Wilbur A. Orr, Orr & Kopecky, Washington, Ga., for plaintiffs.

David H. Hunter, Dept. of Justice, Washington, D.C., for defendant.

Before WRIGHT, Circuit Judge, and ROBINSON and PRATT, District Judges.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. The Board of Commissioners of Wilkes County, Georgia, is the governing body of Wilkes County, one of 159 counties of Georgia, Ga.Code § 23–101, and the Board of Education is the governing body of the Wilkes County School District, a school district under the law of the State of Georgia. The State of Georgia is subject to the prohibitions of Section 4(a) of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973b(a). Complaint and Answer, paragraphs 1 and 3;[1] 30 Fed.Reg. 9897 (Aug. 6, 1965).

2. The Board of Commissioners consists of a chairman and four other members, all selected for office by election. As of November 1, 1964, the chairman was elected at large and the four other members were elected from single-member districts; terms of office were not staggered. Ga.Laws 1958, Vol. II, p. 2091. Complaint and Answer, paragraph 7, No. 76–1045.

3. In 1967, effective in 1970, the terms of office for the Board of Commissioners became staggered. In 1972, the electoral system was changed so that the four members besides the chairman would be elected at large, while still required to reside in the districts previously used. In 1975, the electoral system for the Board of Commissioners was recodified. A majority vote is required for nomination for the Board of Commissioners. Ga.Laws 1972, Vol. II, p. 3337; Ga.Laws 1975, Vol. II, p. 2979. Complaint and Answer, paragraph 7, No. 76–1045. Ga.Code Sec. 34–1513.

4. The practices and procedures for the election of the Board of Commissioners different from those in effect on November 1, 1964 have not received administrative preclearance pursuant to Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c. Complaint and Answer, paragraph 14, No. 76–1045.

5. The Board of Education consists of a chairman and four other members, all selected for office by election. As of November 1, 1964, the chairman was elected at large and the four other members were elected from single-member districts. Ga. Laws 1958, Vol. I, p. 460. Complaint and Answer, paragraph 7, No. 76–1046.

6. In 1972, the electoral system for the Board of Education was changed so that all members would be elected at large, with each member required to reside in one of the four districts and with two members, elected from posts, to be residents of election district 1, the most populous district. A majority vote is required for nomination for the Board of Education. Ga.Laws 1972, Vol. I, p. 1518. Complaint and Answer, paragraph 7, No. 76–1046. Ga.Code Sec. 34–1513.

7. The practices and procedures for the election of the Board of Education different from those in effect on November 1, 1964, have not received administrative preclearance pursuant to Section 5 of the Voting Rights Act. Complaint and Answer, paragraph 14, No. 76–1046.

8. Relevant statistical data from the record and from the 1970 census with respect to the population and number of registered voters, by race, for the four districts of the county previously used as single-member districts and now used as residency districts are presented in the following table:

Table 1. Population and Registered Voters by Election District

| Election District | Total Population | | | | | Voting Age Population[3] | | | | | Registered Voters (August 1977)[4] | | | | |
| | Number[1] | | Percentage[2] | | Number | | | Percentage | | Number | | | Percentage | |
| | Total | White | Black | White | Black | Total | White | Black | White | Black | Total | White | Black | White | Black |
| 1 | 4818 | 2342 | 2476 | 48.6 | 51.4 | 3132 | 1683 | 1449 | 53.8 | 46.2 | 2418 | 1582 | 836 | 65.4 | 34.6 |
| 2 | 1610 | 1078 | 532 | 67.0 | 33.0 | 1085 | 774 | 311 | 71.3 | 28.7 | 731 | 687 | 44 | 94.0 | 6.0 |
| 3 | 1691 | 916 | 775 | 54.2 | 45.8 | 1112 | 658 | 454 | 59.2 | 40.8 | 870 | 611 | 259 | 70.2 | 29.8 |
| 4 | 2065 | 1002 | 1063 | 48.5 | 51.5 | 1342 | 720 | 622 | 53.7 | 46.3 | 845 | 532 | 313 | 63.0 | 37.0 |
| Total | 10184 | 5338 | 4846 | 53.0 | 47.0 | 6671 | 3835 | 2836 | 57.5 | 42.5 | 4864 | 3421 | 1452 | 70.1 | 29.9 |

1. Unless otherwise indicated, citations to the record will be to documents in the record of both cases.

1. Complaint, Exhibit E, No. 76–1045; Complaint, Exhibit B, No. 76–1046; both corrected by Exhibit A to Plaintiffs' Reply Brief. It is assumed that all of enumeration district 12 is contained in election district 1.

2. Plaintiffs' Reply Brief, p. 6.

3. Bureau of the Census, 1970 Census Population, General Population Characteristics, Georgia, table 35. Because census enumeration district statistics are not broken down into the necessary age classifications—see Exhibit B to Plaintiffs' Reply Brief—the statistics for the election districts assume that the age distribution is constant throughout the county.

4. Exhibit A to Plaintiffs' Reply Brief; Plaintiffs' Exhibit 3, Deposition of Edna J. Andrews, Secretary to Board of Registrars, Wilkes County.

9. Election returns and corresponding voter registration data, from the record, for elections since 1964 in which there have been black candidates are presented in the following tables:

Table 2. Election Results in Contest Involving Black Candidates (1976)

| Election District | Militia District | Registered Voters [1] | | Primary Election, Board of Commissioners, August 10, 1976 | | Run-off Primary Election, Board of Commissioners, August 31, 1976 | |
|---|---|---|---|---|---|---|---|
| | | | | Votes for [2] | | Votes for [2] | |
| | | White | Black | White Candidate(s) | Black Candidate | White Candidate | Black Candidate |
| 1 | 164 | 1677 | 859 | 1239 | 541 | 852 | 492 |
| 2 | 174 | 130 | 14 | 91 | 22 | | |
| | 175 | 296 | 27 | 239 | 24 | | |
| | 176 | 121 | 46 | 85 | 49 | | |
| | 177 | 84 | 34 | 65 | 22 | | |
| Total | | 2308 | 980 | 1719 | 658 | 852 | 492 |

1. Plaintiffs' Answers to (First) Interrogatories by United States, No. 8.

2. *Id.*, No. 9, No. 76–1045.

Table 3. Election Results in Contests Involving Black Candidates (1966)

| Election District | Militia District | Registered Voters [1] | | Primary Election, Board of Education, 1966 | |
|---|---|---|---|---|---|
| | | | | Votes for [2] | |
| | | White | Black | White Candidate | Black Candidate |
| 1 | 164 | 1895 | 610 | 1227 | 362 |

1. Plaintiffs' Responses to Requests for Admission of United States, No. 9; Exhibit A to Plaintiffs' Reply Brief. For the estimate of the number of registered voters by race in District 1 in 1966—for which only countywide statistics are in the record—it is assumed that the proportion of white voters and black voters of the total number of white voters and black voters was the same in 1966 as it was in 1977.

2. Plaintiffs' Answers to (First) Interrogatories by United States, No. 9, No. 76–1046.

10. Although plaintiffs' witnesses have testified in a conclusory manner that race is not important in politics in the county, the evidence in the record requires the conclusion that racial bloc voting exists in the county and that black candidates receive little, if any, support from white voters. This conclusion is supported by the following evidence: voting pattern in election contests in which there are black candidates show that black candidates receive about the same number of votes as there are blacks registered to vote, or fewer; whites elected to office admit that black candidates will do better in black voting precincts than in white voting precincts; no blacks have been elected to office at least within recent decades, although blacks constitute 47 percent of the county's population; there have been very few black candi-

dates for office; blacks have not been appointed to fill vacancies for elected offices; and, at least since 1964, none of the officers of the Democratic Party, whose nominees are invariably elected, have been black persons. Deposition of John W. Williamson, Jr., Probate Judge, pp. 9, 13–14; Deposition of George Norman, member Board of Commissioners, pp. 4–5, 8–11; Tables 1, 2, 3; Plaintiffs' Responses to Requests for Admission of United States, Nos. 1–3, 5, 6; Deposition of John O. Haney, former chairman, Board of Registrars, p. 17; Deposition of James A. Reynolds, Chief Registrar, p. 10; Plaintiffs' Answer to [First] Interrogatories by United States, Nos. 15, 16.

11. The record demonstrates that the populations of the four election districts in Wilkes County deviate substantially from ideal size. The population in each district and the deviation from the ideal are set out in the following tables:

Table 4. Deviation from Equal District Population
(Districts and Electoral System in Effect November 1, 1964) [1]

| Election District | Population [2] | Ideal Size | Difference | Percentage |
|---|---|---|---|---|
| 1 | 4818 | 2516 | + 2302 | + 91.5 |
| 2 | 1610 | 2516 | − 906 | − 36.0 |
| 3 | 1691 | 2516 | − 825 | − 32.8 |
| 4 | 2065 | 2516 | − 451 | − 18.3 |
| Total | 10184 | — | — | + or − 127.5 |

1. Complaint and Answer, paragraph 7.
2. Table 1.

Table 5. Deviation from Equal District Population
(Districts and Electoral System for Wilkes County School District, Ga. Laws 1972, Vol. I, p. 1518) [1]

| Election District | Population [2] | Ideal Size | Difference | Percentage |
|---|---|---|---|---|
| 1 (2 members) | 4818 | 4074 | + 744 | + 18.3 |
| 2 | 1610 | 2037 | − 427 | − 21.0 |
| 3 | 1691 | 2037 | − 346 | − 17.0 |
| 4 | 2065 | 2037 | + 28 | + 1.4 |
| Total | 10184 | — | — | + or − 39.3 |

1. Complaint and Answer, paragraph 7, No. 76–1046.
2. Table 1.

12. The plaintiffs have alleged that the purpose of the electoral changes at issue was to satisfy one person, one vote requirements. However, these voting changes were made without the consultation of representatives of the black community, and the record demonstrates that available options for satisfying one person, one vote requirements that would enhance black voting strength were not considered. For example, population data by race for census enumeration districts demonstrate that if the county had been divided into fairly drawn single-member districts of equal population, the black population percentage in one district could have been as high as 71 percent. (Data for census enumeration districts from the 1970 census is contained in Exhibit B to Plaintiffs' Reply Brief.) Complaint, paragraph 8, both cases; Deposition of Hal P. Shank, former member, Board of Education, pp. 3–5; Plaintiffs' Answers to [First] Interrogatories by United States, Nos. 12, 13, 14, No. 76–1045, and No. 14, No. 76–1046.

13. The record also demonstrates that the selection of the at-large plan, which

would diminish black voting strength in some areas of the county instead of a single-member district plan that might enhance black voting strength in some areas, was made shortly after black residents of Wilkes County began to register to vote in substantial numbers. As the following table indicates, black registration has not increased significantly since the change to at-large elections:

Table 6.  Voter Registration by Race, 1962–1977

| Year | Number of Registered Voters | | | Percentage of Total | |
|---|---|---|---|---|---|
| | Total | White | Black | White | Black |
| 1962 [1] | 4022 | 3527 | 495 | 87.7 | 12.3 |
| 1966 [2] | 5147 | 4087 | 1060 | 79.4 | 20.6 |
| 1972 [3] | 4964 | 3610 | 1354 | 72.7 | 27.3 |
| 1974 [4] | 4434 | 3350 | 1084 | 75.6 | 24.4 |
| 1974 [5] | 4566 | 3428 | 1138 | 75.1 | 24.9 |
| 1977 [6] | 5091 | 3506 | 1585 | 68.9 | 31.1 |
| 1977 (August) [7] | 4864 | 3412 | 1452 | 70.1 | 29.9 |

1. Plaintiffs' Responses to Requests for Admissions of United States, No. 7.
2. *Id.*, No. 9.
3. Complaint, Exhibit E, No. 76–1045; Complaint, Exhibit B, No. 76–1046.
4. *Id.*,
5. Plaintiffs' Responses to Request for Admissions of United States, Nos. 11 and 12.
6. Plaintiffs' Answers to (First) Interrogatories by United States, No. 8.
7. Exhibit A to Plaintiffs' Reply Brief; Plaintiffs' Exhibit 3, Deposition of Edna J. Andrews, Secretary to Board of Registrars.

14. On the basis of the evidence in the record, the Court is unable to conclude that the voting changes at issue were adopted without a racially discriminatory purpose.

15. The plaintiffs contend that the change to at-large elections has had a racially neutral effect because black voters were not in a position to control any of the malapportioned single-member districts. Although it is clear that, with the existence of bloc voting, black residents were not in a position to control any of the malapportioned districts, they could exert substantially greater influence in the malapportioned election districts 1 and 4 than they could under the at-large scheme; and, if the registration rate among black voters were to increase, that influence would be even greater.

16. The low percentage of black residents of voting age who are registered to vote is directly related to the following causes: to past discrimination in voting against black residents; to the failure of the elected officials to remedy the effects of that discrimination; to the virtual total control of the electoral process by white persons; and to the adoption of the at-large election plan at issue in these suits. Haney Deposition, pp. 3, 7, 10–11, 19, 20; Deposition of Bradley S. Armour, former member, Wilkes County Board of Registrars, pp. 3–7, 9; Reynolds Deposition, pp. 11–12; Deposition of Jean Daniel Beckum, Director, Department of Family and Children's Services, and former deputy registrar, pp. 3–4, 7–8, 10–12; Deposition of Edna J. Andrews, Secretary to the Board of Registrars, pp. 3, 10, 17–19, 21, 32; Williamson Deposition, pp. 3, 10–11, 17; Plaintiffs' Answers to [First] Interrogatories by United States, Nos. 3 and 4; Plaintiffs' Answers to [Second] Interrogatories by United States, Nos. 1–4.

17. Although a comparison of the at-large plan with the malapportioned single-member district plan demonstrates that the effect of the voting change has been to diminish black voting strength (see Finding No. 15), the discriminatory effect is even more apparent where the at-large plan is compared with possible fairly drawn single-member district plans (see Finding No. 12).

18. If the system of election from single-member districts had been retained, it is probable that black residents of Wilkes County would have and would expect to have in the future a much greater influence in the political process than under the at-large system.

19. On the basis of this record the Court is unable to conclude that the voting changes at issue have not had a racially discriminatory effect.

20. The record demonstrates that under the current method of election, black residents have less opportunity than white residents to participate in the political process and to elect members of their choice to the Board of Commissioners and the Board of Education. If the single-member district system of election had been retained, it is reasonable to conclude that the opportunity for black residents to participate in the political process would have been greatly enhanced.

### Conclusions of Law

1. This Court has jurisdiction to hear and determine these cases. Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c; 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 2201. *City of Petersburg v. United States*, 354 F.Supp. 1021, 1022, (D.D.C.1972) affirmed, 410 U.S. 962, 93 S.Ct. 1441, 35 L.Ed.2d 698 (1973).

2. This Court is properly convened as a court of three judges. Section 5 of the Voting Rights Act, as amended, 42 U.S.C. § 1973c; 28 U.S.C. § 2284. *City of Petersburg v. United States, supra*, 354 F.Supp. at 1022.

3. Wilkes County, Georgia, and the Wilkes County School District are subject to the preclearance requirement of Section 5. Finding of Fact No. 1. *United States v. Board of Commissioners of Sheffield, Alabama*, 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978); *United States v. Georgia*, 411 U.S. 526, 528 n. 1, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973).

4. Section 5 of the Voting Rights Act requires Wilkes County and the Wilkes County School District, before implementing any voting qualification or prerequisite to voting or standard, practice, or procedure with respect to voting different from that in effect on November 1, 1964, to obtain a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group or to obtain administrative preclearance for such qualification, prerequisite, standard, practice or procedure from the Attorney General. 42 U.S.C. § 1973c; 42 U.S.C. § 1973b(f)(2).

5. Methods of determining the constituency of an elected office and of determining the outcome of elections are practices or procedures with respect to voting within the meaning of Section 5. *Allen v. State Board of Elections*, 393 U.S. 544, 569, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Perkins v. Matthews*, 400 U.S. 379, 390, 394, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *United States v. Board of Commissioners of Sheffield, Alabama, supra*, 435 U.S. at 120–126, 132, 98 S.Ct. at 973–976, 980.

6. The preclearance requirement of Section 5 is a constitutional exercise of the power granted to Congress by the Fifteenth Amendment to the Constitution. *South Carolina v. Katzenbach*, 383 U.S. 301, 308, 325–27, 334–35, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); *United Jewish Organizations v. Carey*, 430 U.S. 144, 156–57, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977); *Beer v. United States*, 425 U.S. 130, 133, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976).

7. In an action for a declaratory judgment under Section 5, the burden of proof is on the plaintiff. *South Carolina v. Katzenbach, supra*, 383 U.S. at 328, 335, 86 S.Ct. 803; *United States v. Georgia, supra*, 411 U.S. at 538, 93 S.Ct. 1702.

8. The plaintiffs do not satisfy the burden of proving the absence of discriminatory purpose by merely stating that the change from elections from single-member districts to elections at-large was done to

satisfy one person, one vote requirements. This is because the record demonstrates that alternate options for satisfying one person, one vote standards were available and the record does not demonstrate the reason for selecting the at-large method over other options. Such is particularly true in this case since it appears that the at-large method would retain black voting strength at a minimum level while alternate options would enhance black voting strength. Plaintiffs have failed to meet their burden of demonstrating that the adoption of the voting changes at issue was done without a discriminatory racial purpose. Findings of Fact Nos. 12, 13, 14. *City of Richmond v. United States*, 422 U.S. 358, 378, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975); *Nevett v. Sides*, 571 F.2d 209, 221-225 (5th Cir. 1978).

9. The use of at-large elections in Wilkes County has the effect of abridging the right to vote of blacks on account of race or color by diluting and reducing the influence of blacks in elections for the Board of Commissioners and the Board of Elections compared to the use of the existing election districts. Finding of Fact No. 15. *Beer v. United States, supra*, 425 U.S. at 141, 96 S.Ct. 1357; *City of Richmond v. United States, supra*, 422 U.S. at 370-71, 95 S.Ct. 2296; *Allen v. State Board of Elections, supra*, 393 U.S. at 569, 89 S.Ct. 817.

■ 10. Since the existing election districts are severely malapportioned, it is appropriate, in measuring the effect of the voting changes, to compare the voting changes with options for properly apportioned single-member district plans. Such a comparison clearly demonstrates that the at-large method has had a racially discriminatory effect. Finding of Fact No. 12. *City of Richmond v. United States, supra*, 422 U.S. at 370-71, 95 S.Ct. 2296; *United Jewish Organizations v. Carey, supra*, 430 U.S. at 159-60, 97 S.Ct. 996.

■ 11. The plaintiffs have failed to meet their burden of demonstrating that the voting changes at issue are nondiscrimi-

natory in purpose and effect and thus plaintiffs are not entitled to the declaratory relief sought in this litigation. It is not necessary for this Court to determine whether the at-large election plan so discriminates on the basis of race as to violate the Fourteenth and Fifteenth Amendments to the Constitution. *Beer v. United States, supra*, 425 U.S. at 140-41, 96 S.Ct. 1357.

An Order consistent with the foregoing Findings of Fact and Conclusions of Law has been entered this day.