Judson EDGE, Ronald J. Foust, Georgia L. Deriso, David W. Tietjen, and Arthur Watts, Plaintiffs-Appellants,

v.

SUMTER COUNTY SCHOOL DISTRICT, et al., Defendants-Appellees.

No. 84–8489.

United States Court of Appeals, Eleventh Circuit.

Nov. 14, 1985.

Laughlin McDonald, Atlanta, Ga., for plaintiffs-appellants.

Warren Plowden, Jr., Macon, Ga., Henry L. Crisp, Americus, Ga., for defendants-appellees.

George M. Peagler, Jr., Americus, Ga., for Sue Smith.

Mark L. Gross, U.S. Dept. of Justice, Civil Rights Div., Washington, D.C., Wm. Bradford Reynolds, Charles J. Cooper, Washington, D.C., amicus.

Before RONEY and HILL, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

In this Voting Rights Act case, five residents of Sumter County, Georgia, challenge a court-ordered reapportionment plan for the election of county school board members. We vacate and remand on the ground that the district court failed to properly follow the controlling cases and misapplied Sections 2 and 5 of the Voting Rights Act of 1965. 42 U.S.C.A. § 1973. Following the guide of the Supreme Court, however, we specifically provide that the persons elected under the plan can remain in office until the next election, November, 1986, by which time a valid plan can be adopted.

Sumter County has a population of about 12,500, forty-four percent of whom are black. No black person has ever served on the county school board. In 1964, prior to the Voting Rights Act, Georgia law provided that the Sumter County grand jury appoint school board members. In 1968, a legislative decision was made that school board members should be elected. Several attempts have been made to adopt a legal electoral system, but all have failed. The history of litigation that led to the court-ordered plan under review reflects that failure.

The plan initially adopted by the Georgia State Legislature in Georgia Laws of 1968 was held to be unconstitutional under the one-person, one-vote principle. *Carter v. Crenshaw*, No. 768 (M.D.Ga. July 12, 1972). The district court in that case entered an order allowing the Board to seek a legislative remedy.

In 1973, Georgia State Legislature then enacted legislation abolishing the district system and requiring that all members of the Board be elected at-large. The new election scheme was submitted for preclearance under Section 5 of the Voting Rights Act and the Attorney General objected to the at-large plan on the ground that "we are unable to conclude, as we must under the Voting Rights Act, that the use of at-large election system you have submitted will not have a racially discriminatory effect." Proceeding, however, on the theory that the 1973 plan resulted from a federal court order and thus, did not need Section 5 approval, the Board continued to hold at-large elections, until a three-judge district court held that the plan was subject to Section 5, and enjoined use of the statute on December 1, 1981. *Edge v. Sumter County School District*, 541 F.Supp. 55 (M.D.Ga.1981).

The Board appealed the panel decision and the Supreme Court affirmed, *sub nom. Sumter County School District v. Edge*, 456 U.S. 1002, 102 S.Ct. 2287, 73 L.Ed.2d 1297 (1982).

The three-judge court remanded the case to a single judge "for supervision and development of a new election plan which satisfies legal requirements." *Edge*, 541 F.Supp. at 58. Upon remand, pursuant to an order of the single judge, the Board in 1982 and 1983 submitted two different reapportionment plans to the Attorney General for preclearance under Section 5. Both plans provided for one at-large member and six single-member districts and both were rejected on the ground that they did not fairly reflect black voting strengths.

The district court then decided that judicial intervention was appropriate and designed a new apportionment plan. It is from this Court-ordered plan that plaintiffs now appeal.

■ We agree with both the appellants and the submission of the United States as *amicus curiae* that the district court could not validly adopt a reapportionment plan without determining whether the plan complied with Section 2 of the Voting Rights Act, as amended, 42 U.S.C.A. § 1973. *Jordan v. Winter*, 541 F.Supp. 1135 (N.D. Miss.1982), *vacated and remanded, sub nom. Brooks v. Winter*, 461 U.S. 921, 103 S.Ct. 2077, 77 L.Ed.2d 291 (1983); *United States v. Marengo County Comm'n*, 731 F.2d 1546 (11th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 375, 83 L.Ed.2d 311 (1984). The cases and the legislative history well document the factors that need to be considered to determine compliance with Section 2, and it is not necessary to repeat them here. *Zimmer v. McKeithen*, 485 F.2d 1297, 1305 (5th Cir.1973) (*en banc*), *aff'd per curium sub nom. East Carroll Parish School Board v. Marshall*, 424 U.S. 636, 96 S.Ct. 1083, 47 L.Ed.2d 296 (1976); Senate Rep. No. 97–417, 97th Cong. 2d Sess. 28–29 (1982). *See also United States v. Dallas County Comm'n*, 739 F.2d 1529, 1534–35 (11th Cir.1984); *Ketchums v. Byrne*, 740 F.2d 1398, 1403–06 (7th Cir. 1984); *Velasquez v. City of Abilene*, 725 F.2d 1017, 1020–23 (5th Cir.1984).

A hearing must be held to permit the parties to submit evidence on the Section 2 issues. Although appellants submitted documentary evidence on some of the relevant factors, the district court held no hear-

ing before adopting the plan and made no analysis in its decision of the factors that may indicate that the plan results in prohibited discrimination. Accordingly, a hearing is necessary to determine whether the court's plan complies with Section 2.

Although the appellant invites this Court to decide that the evidence in the record at this time demonstrates that the court-ordered plan results in discrimination within the meaning of Section 2, it is not appropriate that we consider that argument. Where the district court misapplied legal standards in making findings concerning discrimination, the proper course for this Court is to remand the case for reconsideration under the correct standards. *Pullman-Standard v. Swint*, 456 U.S. 273, 291–93, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982).

There are two principles which, in our judgment, the district court misapplied. First, the court decided that the court-ordered plan need not be too tailored to deal with the specific objection raised by the Attorney General to the plans submitted, on the theory that the Section 5 objections were limited to the so-called "no retrogression rule" dealt with in *Beer v. United States*, 425 U.S. 130, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1975). The district court said "That rule has no application in which a political subdivision is converting from at-large elections to single-member districts because there was no retrogression to measure." The court's analysis is flawed in two respects. First, that proposition assumes there was a valid at-large system in place and the proposed plan would change that system. But the three-judge court held that "there is now no legally enforceable election system for the school district," *Edge v. Sumter County*, 541 F.Supp. at 57. The Attorney General's Section 5 objection, itself, states that, although normally a proposed plan must be compared with the one presently in effect, where no legal plan is in effect "it is appropriate in measuring the effect of the voting changes to compare the voting changes with options for properly apportioned single-member district plans." *Wilkes County, Georgia v. United States*, 450 F.Supp.

1171, 1178 (1978). The principle of the *Wilkes County* case appears to be sound, and especially applicable in a situation such as this where there has never been a legally valid plan for the election of school board members in effect. Therefore, the district court should have evaluated any proposed plan in connection with other proposed plans to address the requirement in Section 2 that members of a protected class do not have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

Second, the *Beer* court, in discussing the no-retrogression rule, said that reapportionment that enhances the position of racial minorities with respect to their effective exercise of the electoral franchise cannot violate Section 5, *"unless the new apportionment itself so discriminates on the basis of race or color as to violate the Constitution."* (emphasis added). Ordinarily, a change from at-large elections to single-member districts would appear to enhance the position of racial minorities. However, in this case the December 17, 1982 letter of the Attorney General, objecting to the first Board submitted plan, said:

> Our analysis suggests that, with the annexations taken into account, the present proposal fails to offer black voters a realistic opportunity to elect candidates of their choice.

Thus, the Attorney General's objections appear to be based partially in constitutional as well as statutory concepts.

The second principle misapplied by the district court involves the single-member, at-large problem in electoral cases. The court thought it could not delve into the Attorney General's objections lodged against a six single-member district and one at-large seat "because of the mandate of *Connor v. Johnson*, 402 U.S. 690, 91 S.Ct. 1760, 29 L.Ed.2d 268 (1971), the court is required to adopt an election scheme composed solely of single-member districts." In *Upham v. Seamon*, 456 U.S. 37, 102 S.Ct. 1518, 71 L.Ed.2d 726 (1982), the Supreme Court clearly stated that al-

though *Connor* suggested single-member districts are preferable to multi-member districts, at-large districts that do not offend either the constitution or the statute should not be rejected in the court-ordered remedy.

It is true that this Court has held that court-ordered reapportionment plans are subject in some respects to stricter standards than are plans developed by a state legislature. *Wise v. Lipscomb,* 437 U.S. [535] at 540, 57 L.Ed.2d 411, 98 S.Ct. 2493 [at 2497]; *Connor v. Finch,* 431 U.S. 407, 414, 52 L.Ed.2d 465, 97 S.Ct. 1828 [1833] (1977). This stricter standard applies, however, only to remedies required by the nature and scope of the violation: 'The remedial powers of an equity court must be adequate to the task, but they are not unlimited.' *Whitcomb v. Chavis, supra* [403 U.S.] at 161, 29 L.Ed.2d 363, 91 S.Ct. 1858. We have never said that the entry of an objection by the Attorney General to any part of a state plan grants a district court the authority to disregard aspects of the legislative plan not objected to by the Attorney General. There may be reasons for rejecting other parts of the State's proposal, but those reasons must be something other than the limits on the court's remedial actions. Those limits do not come into play until and unless a remedy is required; whether a remedy is required must be determined on the basis of the substantive legal standards applicable to the State's submission (footnote omitted).

Whenever a district court is faced with entering an interim reapportionment order that will allow elections to go forward it is faced with the problem of 'reconciling the requirements of the Constitution with the goals of state political policy.' *Connor v. Finch supra* at 414, 52 L.Ed.2d 465, 97 S.Ct. 1828 [at 1833]. An appropriate reconciliation of these two goals can only be reached if the district court's modifications of a state plan are limited to those necessary to cure any constitutional or statutory defect.

*Upham v. Seamon,* 456 U.S. 37, 42–43, 102 S.Ct. 1518, 1521–22, 71 L.Ed. 726 (1982).

It is not at all clear that the Attorney General's objections encompassed the at-large district submitted by the Board. If the Board submitted plans could be modified to meet constitutional and statutory requirements and preserve the legislative preference of one at-large district and six single-member districts, it was incumbent on the court under *Upham* to design such a remedy.

We do not here mean to indicate in any way the ultimate decision that should be made as to the at-large district. The Board has not argued the point. But the Board has never submitted a seven single-member district plan to the Attorney General, and it would seem incumbent upon it to do so, if it indeed is satisfied with such a plan. The failure to do so lends credence to the appellant's argument that the Board is simply circumventing the preclearance requirements of the Voting Rights Act in relying upon a court-ordered plan.

■ Following the guide of the Supreme Court in similar cases, *see Upham v. Seamon,* 456 U.S. 37, 44, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982), that the district court erred does not mean that the members elected under the plan should not continue in office until a valid electoral plan can be put in place.

In the ordinary course of Section 5 litigation, once the three-judge court has found a plan to be objectionable and unenforceable, that plan is no longer in effect. Since the three-judge court lacks jurisdiction to order a remedy for the violation, *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969); *Perkins v. Matthews,* 400 U.S. 379, 383–85, 91 S.Ct. 431, 434–35, 27 L.Ed.2d 476 (1971), vacating the objectionable plan automatically reinstates the last valid plan in effect. Here, however, the three-judge court found that there was no legally enforceable election system for the school district to be reinstated. The scheme vacated by the three-judge court was the 1973 at-large plan. The plan in effect until then was the 1968 mixed-

electoral system, declared unconstitutional in *Carter v. Crenshaw,* No. 768 (M.D.Ga. July 12, 1972).

■ The United States as *amicus curiae* on this appeal has argued that when the three-judge court enjoined the at-large plan, the effect was to reinstate the plan in effect on November 1, 1964, a system that provided for the appointment of school board members by the members of the Sumter County Grand Jury. The Government argues the three-judge court could not bestow jurisdiction in the single-judge court to supervise the parties in developing an enforceable plan. We are obliged to notice any lack of jurisdiction regardless of whether the question is raised by the parties themselves. *Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

In our judgment, the Government's argument fails for several reasons. First, the three-judge decision which in effect held that the district court had the jurisdiction here exercised was affirmed by the Supreme Court. 456 U.S. 1002, 102 S.Ct. 2287, 73 L.Ed.2d 1297 (1980). In such a posture, it would be inappropriate for this Court to *sua sponte* hold the three-judge court was incorrect in that decision.

Second, it is clearly contemplated by the Supreme Court that the federal courts have jurisdiction to supervise, create and implement voting plans other than the last enforceable plan or that in effect at the time the Voting Rights Act was first passed. In *Connor v. Waller,* 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975), the Court found that the district court erred in holding certain legislative acts not subject to Section 5 preclearance. Nevertheless, the reversal was "without prejudice to the authority of the district court, if it should become appropriate, to entertain a proceeding to require the conduct of the 1975 elections pursuant to a court-ordered reapportionment plan...." 421 U.S. at 656–657, 95 S.Ct. at 2003. In *Wise v. Lipscomb,* 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1978) the Court noted that while parties sought Section 5 clearance, "if a State's electoral processes are not to be completely frustrated, federal courts will at times necessarily be drawn further into the reapportionment process and required to devise and implement their own plans." 437 U.S. at 542, 98 S.Ct. at 2498.

Third, the Georgia legislature has made a clear choice that school board members be elected. The fact that no valid electoral plan has been put in place does not denigrate this decision. The principle of *Upham v. Seamon* would dictate that the court and the parties attempt to find a way to a valid electoral scheme, just as the parties and the court have been doing since this litigation commenced.

No cases hold that a three-member district court *must* resort to a preexisting appointive plan to replace an elective one, even though the validity of the appointive plan had never been challenged, instead of fashioning a plan for a valid election scheme.

The appellants in their brief point out the possible jurisdiction of problems but argue the Grand Jury plan is unconstitutional and would be retrogressive in violation of Section 5. The constitutionality of the Sumter County Grand Jury plan as it existed prior to November 1, 1965 has never been addressed by any federal court, however, and we decline to rest this decision on those arguments. If we are wrong in rejecting the argument that the Grand Jury plan is legally in place, then there would be no jurisdiction for the district court to order a new plan until litigation established the unconstitutionality of the Grand Jury plan. As it is, we simply hold that the district court had the jurisdiction delivered to it by the remand from the three judge court.

Since elections have recently taken place under the court's plan, it would be inequitable here, as in *United States v. Georgia,* 351 F.Supp. 444 (N.D.Ga.), *aff'd,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973), to require new elections at this time. According to the district court order, school board elections for three districts will occur again in November 1986. There is sufficient time for the district court to hold its Section 2 hearing, make any changes in the plan it deems necessary in light of that

hearing and still hold the election on its scheduled date.

VACATED and REMANDED.

JAMES C. HILL, Circuit Judge, specially concurring:

Though I persist in the misgivings expressed in dissent in *Kirksey v. Board of Supervisors*, 554 F.2d 139, 159–163 (5th Cir.1977), restated in special concurrence in *Lee County Branch of NAACP v. City of Opelika*, 748 F.2d 1473, 1483 (11th Cir. 1984), I agree that Judge Roney's opinion for our panel correctly applies our controlling precedent to these issues. I CONCUR.