MISSISSIPPI STATE CHAPTER,
OPERATION PUSH, et al.,
Plaintiffs,

v.

Ray MABUS, Governor of Mississippi,
et al., Defendants.

Civ. A. No. DC 84–35–D–O.

United States District Court,
N.D. Mississippi,
Delta Division.

July 18, 1989.

Judith Reed, NAACP Legal Defense and Educational Fund, Inc., New York City, Frank R. Parker, Samuel Issacharoff, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., Johnnie Walls, Greenville, Miss., for plaintiffs.

T. Hunt Cole, Jr., Special Asst. Atty. Gen., Hubbard T. Saunders, IV, Jackson, Miss., Andrew R. Carr, Jr., Memphis, Tenn., for defendants.

DAVIDSON, District Judge.

### SUPPLEMENTAL OPINION

This action is presently before the court on the defendants' final report to the court pursuant to the court's November 16, 1987 memorandum opinion and order. *See Mississippi State Chapter, Operation PUSH v. Allain,* 674 F.Supp. 1245 (N.D.Miss. 1987). The defendants' final report recites the provisions of certain remedial legislation enacted in the 1988 session of the Mississippi Legislature. After the plaintiffs interposed objections to the defendants' final report, the court set this mat-

ter down for a hearing in Oxford, Mississippi on June 1, 1989. At that time, the court heard arguments and received evidence from the parties on the adequacy and legality of the remedial legislation enacted by the State of Mississippi in the 1988 legislative session. Having fully considered the arguments and proof presented by the parties, the court holds that the remedial legislation enacted by the State of Mississippi is sufficient to cure the violations of Section 2 of the Voting Rights Act noted in the court's earlier memorandum opinion and order.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case originated on March 1, 1984 when plaintiffs filed their complaint challenging the continued requirement of dual registration imposed by Mississippi's voter registration laws. Although Mississippi's registration procedures were amended in the 1984 session of the Mississippi Legislature, the plaintiffs maintained that those changes failed to completely eliminate dual registration and certain prohibitions against satellite or off-site voter registration. *See* 1984 Mississippi Laws, chs. 457 and 460. The court concurred in the plaintiffs' contention and permitted the plaintiffs to proceed to trial on their challenge to Mississippi's registration procedures under Section 2 of the Voting Rights Act. 42 U.S.C. § 1973(a).

At the trial of this matter, the proof focused on four practices which the plaintiffs alleged to constitute violations of Section 2: (1) the failure of the Mississippi Legislature to make the 1984 amendments to Mississippi's voter registration procedures retroactive; (2) the failure of circuit clerks to deputize all municipal clerks; (3) the restrictions on satellite registration related to the circuit clerk's unbridled discretion to schedule satellite registration; and (4) the failure of circuit clerks to deputize volunteer voter registrars. The plaintiffs also offered proof on a variety of additional voter registration procedures which they would like to see implemented by the State

of Mississippi. Among these are included mail-in registration procedures, liberalized deputization of volunteer registrars, widespread satellite registration procedures, and registration through state agency offices, to name but a few. The court permitted this proof into the record in an attempt to make a proper and well-informed decision on the appropriate relief in the event the court found a violation of Section 2.

As noted in the court's November 16, 1987 memorandum opinion and order, the court held that the plaintiffs had proven a violation of Section 2 of the Voting Rights Act on each of the four practices which they challenged at trial. *Mississippi State Chapter, Operation PUSH*, 674 F.Supp. at 1269–1270. In lieu of entering its own order mandating certain changes to Mississippi's voter registration procedures, the court permitted the defendants an opportunity to effect their own remedial measures via enactment of additional legislation.

As noted above, in the 1988 session of the Mississippi Legislature certain legislation was enacted which further amended Mississippi's voter registration procedures. *See* 1988 Mississippi Laws, ch. 350. It is this remedial legislation which the court now reviews in order to determine whether the defendants have cured the defects noted in the court's November 16, 1987 memorandum opinion and order.

## II.

### CONCLUSIONS OF LAW

In reviewing the legislation enacted by the Mississippi Legislature, this court must follow the directive announced by the Court of Appeals for the Fifth Circuit that:

> It is the legislature's function to make decisions of basic political policy. Thus, even where a legislative choice of policy is perceived to have been unwise, or simply not the optimum choice, absent a choice that is either unconstitutional or otherwise illegal under federal law, federal courts must defer to that legislative judgment.

*Seastrunk v. Burns,* 772 F.2d 143, 151 (5th Cir.1985) (citations omitted). The Fifth Circuit recently reiterated that:

> [W]e recognize that the district court is not required to choose what might be considered to be the "superior" plan. If the local government plan is found not to violate statutory provisions or the Constitution, the Supreme Court has held that the district court must accept such a plan.

*Wright v. City of Houston, Miss.,* 806 F.2d 634, 635 (5th Cir.1986).

■ The court notes that there is a scarcity of precedent on the latitude and authority of the federal courts to impose changes to a state's voter registration procedures. However, believing that the precedent developed with regard to reapportionment plans and election procedures is equally applicable to this voter registration case, this court will follow the prevailing rule that "the federal district court is precluded from substituting even what it considers to be an objectively superior plan for an otherwise constitutionally and legally valid plan that has been proposed and enacted by the appropriate state governmental unit." *Seastrunk,* 772 F.2d at 151.

Having announced the framework from which this court operates, it should be clear that the only proper question for consideration here is whether the State of Mississippi's 1988 legislation is sufficient to correct the violations of Section 2 of the Voting Rights Act found by this court in its earlier memorandum opinion and order. Insofar as this court found no constitutionally discriminatory defects even in the 1984 legislation, the court reviews here only the Section 2 issues presented. Again following the directive of the appellate courts, the court scheduled a hearing on the remedial legislation enacted by the Mississippi Legislature. As the Eleventh Circuit stated in *Edge v. Sumter County School District,* 775 F.2d 1509 (11th Cir.1985): "A hearing must be held to permit the parties to submit evidence on the Section 2 issues." *Id.,* 775 F.2d at 1510.

■ Plaintiffs place much emphasis on the court's finding that black voter registration is approximately 25 percentage points below the white registration rate. *Mississippi State Chapter, Operation PUSH,* 674 F.Supp. at 1255. The plaintiffs attribute this discrepancy entirely to Mississippi's voter registration procedures. However, the court notes that the process of registering to vote is a voluntary process. Some interest and initiative on the part of the prospective voter is required in order to become registered, regardless of the liberality of formal voter registration procedures. Thus, this court is unwilling to attribute the entire 25 percentage point discrepancy between black and white voter registration to Mississippi's voter registration procedures. Although the plaintiffs offered proof at trial suggesting that certain factors—such as the lower percentage of black households with a vehicle available—were responsible in part for the lower percentage of black voter registration, no compelling proof was offered to convince this court that the lower percentage of black registration was due solely to the method of voter registration in Mississippi. Furthermore, the court is concerned here, not only with the actual level of voter registration, but also with the openness and availability of registration to *all* prospective voters and the impediments, if any, maintained by the recent changes enacted by the Mississippi Legislature. The court notes that some factors totally unrelated to the formal registration procedures put into place—factors such as voter apathy—may also be responsible for low voter registration percentages among poor blacks and whites in Mississippi.

■ The remedial legislation enacted by the defendants addresses each of the four deficiencies noted by this court in its earlier opinion and order. The remedial legislation, 1988 Miss. Laws, ch. 350 ("Chapter 350"), made the following changes to Mississippi's voter registration procedures: (1) the 1984 changes were made retroactive, Chapter 350, Section 1; (2) all municipal clerks were deputized as county voter registrars, Chapter 350, Section 4; (3) satellite registration is required to be conducted in at least three voting

precincts in each supervisory district in the county, or in every precinct in the event that a supervisory district has fewer than three precincts, Chapter 350, Section 2; (4) provision was made for registration of disabled voters in their homes, Chapter 350, Section 2; and (5) the county registrar is required to keep extended office hours for the five days preceding the thirtieth day prior to any regularly scheduled primary or general election, Chapter 350, Section 2. All of these changes have been precleared by the United States Department of Justice and are codified at Miss.Code Ann. §§ 23-15-14, 23-15-35, 23-15-37, and 23-15-39 (Cum.Supp.1988).

At the June 1, 1989 hearing on the adequacy and legality of the 1988 remedial legislation, the plaintiffs argued that Chapter 350 will not substantially increase black voter registration and that discrimination allegedly was a factor in the passage of Chapter 350 as compared to the defeat of other legislation which would have permitted mail-in registration and similarly liberalized voter registration procedures. In essence, plaintiffs ask this court to reject the changes adopted by the State of Mississippi and to presume—without any proof to support such a presumption—that the newly enacted registration procedures will have no effect on the disparity between black and white voter registration levels. The court is unprepared and unwilling to make such a ruling in the absence of preponderating proof to support its ruling. Thus, the court must concentrate its inquiry here on a determination of whether the 1988 legislation serves to eliminate the discriminatory impact of prior restrictive voter registration procedures.

Although the plaintiffs offered the opinion testimony of several witnesses that Chapter 350 will not substantially improve

black voter registration, plaintiffs have not offered and arguably cannot provide this court any objective proof that Chapter 350 will not have the ameliorative results the defendants contend it will produce. Plaintiffs offered additional proof to show that there were "better" voter registration procedures proposed in the 1989 legislative session which, if enacted, would have provided for mail-in registration. Mail-in registration is, plaintiffs contend, a necessary step to bridging the disparity between black and white voter registration. These supposed "better" alternatives are wholly irrelevant to the court's inquiry here. In the case *sub judice*, this court must ascertain whether the current voter registration procedures violate Section 2 of the Voting Rights Act. Current voter registration procedures prescribed by Mississippi law may in fact not be the best or the easiest methods available. However, this court can discern—based solely on the evidence presented in this case—no constitutional or statutory flaws in the 1988 legislation. Plaintiffs have offered no persuasive proof to support their bald contention that the 1988 legislation is statutorily defective.[1]

In the face of the expanded registration procedures prescribed by Chapter 350, this court concludes that mail-in registration should not be imposed by court order. In the event the State of Mississippi should desire to implement mail-in registration, that is a matter to be addressed by the Mississippi Legislature. Just as the federal courts have been reluctant in the context of school desegregation cases to involve themselves in the day-to-day operations of school districts, this court is reluctant to entangle itself in the essentially political process of determining the appropriate voter registration procedures for the State of Mississippi.[2] Undeniably, the expanded opportunities for voter registration created

1. The court does not deny that there is substantial support for mail-in registration. Mississippi's Secretary of State, the chief election officer of the state, has announced his support for mail-in registration. Additionally, the vice-chairman of the House Committee on Apportionment and Elections strongly supports mail-in registration and sponsored a bill providing for mail-in registration in the 1989 Mississippi legislative session. *See* Deposition of John Gris-

ham, Jr. However, the popularity of mail-in registration does not in any way support the plaintiffs' suggestion that mail-in registration is statutorily mandated.

2. Interestingly enough, the plaintiffs were almost successful in getting the mail-in registration they seek in the 1989 legislative session. As plaintiffs' proof indicates, a mail-in registration bill introduced in the Mississippi House of Rep-

by the 1988 legislation will have a positive effect on the level of voter registration in the State of Mississippi, provided that unregistered voters choose to avail themselves of the expanded procedures now prescribed by state law.

This court is not willing to gainsay the efforts of the Mississippi Legislature nor to engage in the folly of attempting to predict the effectiveness of the changes mandated by the 1988 legislation. Many of the changes mandated have yet to be put to the test. Even so, plaintiffs are already asking this court to reject those changes. The court is unwilling to reject what appear to be reasonable and legitimate responses to the statutory deficiencies noted in this court's November 16, 1987 memorandum opinion and order. In the opinion of the court, the 1988 legislation cures the Section 2 violations found to exist by this court. *See Mississippi State Chapter, Operation PUSH*, 674 F.Supp. at 1268–1269. Plaintiffs have offered no compelling or persuasive proof that the 1988 legislation fails to cure the Section 2 violations. Moreover, the court holds that the 1988 legislation eliminates the two violations most apparent in the 1984 enactments: all vestiges of dual registration have been entirely removed and the restrictions against satellite registration have been replaced by mandatory quadrennial satellite registration. While the new procedure implemented may not be the expansive improvements in voter registration which plaintiffs continue to request, this court finds that the 1988 legislation remedies the statutory flaws originally contested by the plaintiffs in this action. Accordingly, the court will adopt the final report of the defendants and enter a final judgment in this matter.

ORDERED.

resentatives was passed on the initial vote but later defeated on a motion to reconsider. The court is therefore of the opinion that the mail-in registration sought by plaintiffs may well be implemented by the State of Mississippi in the near future without need of a court directive. A legislative study committee appointed in 1988 issued its report in January 1989, strongly recommending adoption of mail-in registration procedures in Mississippi. *See* Plaintiffs' Exhibit 15.