**Annie Lee JACKSON and Billy L. Dickson, Plaintiffs,**

v.

**Joseph R. STEVENSON, et al., Defendants.**

**Civ. A. No. E83-0215(L).**

United States District Court, S.D. Mississippi, E.D.

July 3, 1986.

Wilbur D. Colom, Columbus, Miss., for plaintiffs.

Alan W. Perry, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of the plaintiffs for attorney fees under 42 U.S.C. § 1988. Following a review of memoranda and stipulations of fact submitted by the parties, this court is of the opinion that plaintiffs' motion should be denied.

Upon receipt of final 1980 census data in late 1981, the defendants, members of the Noxubee County Board of Supervisors (the Board), recognized that redistricting was required prior to the next scheduled election in 1983. On January 8, 1982, the Board retained Hoyt Holland to devise a new plan. At a regular meeting of the Board on January 25, 1983, attended by members of the Board and some white and black Noxubee County citizens, Holland presented Plan 3-B. Over objection of the Board's attorney, the Board members and citizens present decided to delay redistricting until after the 1983 elections to prevent

confusion of voters. The general election was held on November 8 on district lines developed based on the 1970 census. Plaintiffs filed this action on December 5, having never previously mentioned redistricting to the Board. In their complaint, plaintiffs, according to the stipulated facts, sought the following relief:

    a. That the Court grant a declaratory judgment that Noxubee County is severely malapportioned under requirements of the United States Constitution;

    b. That the defendant members of the Board of Supervisors be mandatorily enjoined to formulate a constitutionally acceptable plan immediately, and if the Board of Supervisors fail or refuse to reapportion the districts in accordance with the law, that this Court decree a reapportionment plan for use in the county;

    c. That this Court order new elections in the newly constructed districts; and

    d. That the plaintiffs be awarded their attorney's fees and expenses pursuant to 42 USC § 1988, as well as all other costs.

On December 29, the Board formulated Plan 3–C after reconsideration of Plan 3–B. Copies of Plan 3–C were filed with the Chancery Clerk of Noxubee County and otherwise made available to the public. The Board submitted Plan 3–C to plaintiffs on January 9, 1984 and solicited alternative plans. During the month of January, the parties promulgated discovery requests, including interrogatories by defendants seeking comments regarding Plan 3–C. On January 25, plaintiffs informed defendants that they had retained Scott Levenway as their expert and on the next day defendants produced documents relating to Plan 3–C for Levenway's review. On April 6, following expiration of an extension of time in which to respond to defendants' discovery request, plaintiffs were sanctioned in the amount of $200.00 for failure to respond timely. Plaintiffs filed their re-

sponses on April 12 wherein they limited their answers to reference to plans and maps prepared by Levenway. On April 26, plaintiffs presented Levenway's Plan No. 1 to defendants. Later that day, a public meeting, which had been advertised in the local paper beginning April 5, was held to discuss Plan 3–C.

Defendants requested additional information regarding plaintiffs' proposal on May 16, stating that further action was being delayed "pending receipt of your proposal." On June 5, plaintiffs provided defendants with Levenway's Plan No. 2. On June 15, defendants informed plaintiffs that Levenway's Plan No. 2 was not acceptable and that a new plan, 3–D, had been formulated to reflect input from plaintiffs and the April 26 public hearing. On September 24, plaintiffs' counsel requested an expedited ruling on their August 14 motion for summary judgment due to the fact that school board and election commissioner elections were scheduled for November. The parties entered an agreed order on October 10 enjoining those elections.

On November 12, plaintiffs' attorney signified plaintiffs' approval of Plan 3–D, stating, "[t]he plan should breeze through the Justice Department." The plan was submitted for preclearance on January 14, 1985. More than two months later, plaintiffs' counsel informed the court by letter that plaintiffs' counterproposal rather than the defendants' submission would be approved. The Justice Department approved the defendants' plan on June 11, no objections being filed by any Noxubee County resident.

42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost." In *Hennigan v. Quachita Parish School Board,* 749 F.2d 1148, 1151 (5th Cir.1985), the Fifth Circuit considered the standard for "measuring whether a plaintiff whose efforts did not result in a judgment in his favor has succeeded sufficiently to be a prevailing party."[1] According to the *Hennigan* court,

---

1. The Fifth Circuit recognized several tests had previously been articulated by the court. All, however, share common elements. *See Hennigan,* 749 F.2d at 1151–52.

"the first element that must be established by a plaintiff claiming prevailing party status is whether, as a practical matter, the plaintiff's goal was achieved." *Id.* at 1152. Here plaintiffs' goal of redistricting was obtained. When, as here, however, the goal is achieved by "defendant's unilateral action," the plaintiffs must then show that their suit was "a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior." *Posada v. Lamb County,* 716 F.2d 1066, 1072 (5th Cir.1983) (quoting *Williams v. Leatherbury,* 672 F.2d 549, 550 (5th Cir.1982)). This plaintiffs have not done.

In *Lamb,* the county submitted a redistricting plan to the Department of Justice for preclearance. The plaintiffs, who had not yet filed suit, filed objections with the Department of Justice without notifying the county. The Department of Justice thereafter advised the county that the plan submitted was severely flawed. The county then retained experts to draft a new plan. At this point, counsel for plaintiffs-to-be advised the county that suit would be filed. Plaintiffs then filed suit, after being informed that the new plan was nearly completed. At a hearing on plaintiffs' request for injunctive relief, the court, based on representations that the city was preparing a plan for submission, recessed the proceedings to allow the county to act. The county submitted its plan which was precleared by the Department of Justice. The plaintiffs thereafter sought attorney fees. The district court denied plaintiffs' request, finding, in the words of the Fifth Circuit, that "the plaintiffs simply caught the train as it pulled out of the station." *Posada,* 716 F.2d at 1071.

The Fifth Circuit noted that "[a]t bottom, the inquiry is an intensely factual, pragmatic one." *Id.* at 1072. Comparing the facts presented in this case with those before the court in *Lamb,* this court is com-

pelled to conclude that the plaintiffs here caught the train as it was preparing to pull out of the station. Defendants' actions in deciding to hold unconstitutional elections in 1983 cannot be condoned. Their actions at that time and subsequently do, however, show an awareness of the law and the resolve to comply. When plaintiffs filed suit, defendants had employed a redistricting expert and had been considering his proposals. Certainly defendants here did not move with great speed following initiation of the suit as the submission was not made until more than one year later. The delay was due primarily to defendants' inability to obtain relevant information from plaintiffs. In January 1984, defendants submitted their proposal to plaintiffs and sought plaintiffs' comments and plans. It was not until April, after plaintiffs failed to respond timely to discovery requests and then responded solely with reference to plaintiffs' then-undisclosed plans, that plaintiffs submitted their Plan No. 1 to defendants. In May, defendants' actions were further delayed pending response from plaintiffs. The parties apparently agreed on district lines in October 1984 and plaintiffs signified their approval in November.[2] According to the stipulated facts, plaintiffs never sought participation in the drafting of the plan. Defendants were certainly justified, however, in attempting to solicit plaintiffs' comments and resolving any conflicts prior to submission.

This court, of course, has "no crystal ball." *Posada,* 716 F.2d at 1076. Review of the stipulated facts shows, however, that, at the time plaintiffs filed suit, defendants had already begun the process of redistricting and that defendants conscientiously strove toward that end regardless of plaintiffs' actions. Accordingly, plaintiffs failed in their burden of establishing that their suit was "a substantial factor or a significant catalyst in motivating defendants." *Posada,* 716 F.2d at 1072.

**2.** Sometime between November 1984 and March 1985, counsel for plaintiffs determined that the submitted plan would not be approved. In his letter of March 27, 1985 to the court, he opined that plaintiffs' counterproposal would be the plan acceptable to Justice. The court does not know the nature of plaintiffs' counterproposal although the parties have stipulated that no objections were filed with the Department of Justice. In any event, it was defendants' plan and not plaintiffs' counterproposal that was approved.

It is, therefore, ordered that plaintiffs' motion for attorney fees is denied.