**MISSISSIPPI STATE CHAPTER OPERATION PUSH, et al., Plaintiffs,**

v.

**Ray MABUS, Governor of Mississippi, et al., Defendants.**

**Civ. A. No. DC 84–35–D–O.**

United States District Court, N.D. Mississippi, Delta Division.

March 4, 1992.

---

Frank R. Parker, Barbara Arnwine, Lawyers Committee for Civil Rights Under Law, Washington, D.C., Julius L. Chambers, Judith Reed, NAACP Legal Defense Fund, New York City, Johnnie L. Walls, Greenville, Miss., for plaintiffs.

T. Hunt Cole, Special Asst. Atty. Gen., Jackson, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

Several attorneys' fees motions concerning the above captioned case are presently pending before this court: plaintiffs' motion for an award of attorneys' fees and litigation expenses filed on September 18, 1989, the November 1, 1989 motion to amend same and most recently, plaintiffs' supplemental motion for an award of attorneys' fees and expenses for legal services rendered on appeal. The court's opinion collectively addresses each of these motions beginning with the most recent—plaintiffs' supplemental motion for an award of attorneys' fees and expenses.

## I. BACKGROUND

More than seven years have passed since plaintiffs initially brought suit in this court under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973(a)[1], challenging Mississippi's dual registration requirement and prohibition on satellite (or off-site) voter registration. MISS.CODE ANN. §§ 21–11–1[2] and 23–5–29[3] (1972). Plaintiffs challenged these statutes as devices designed by the state legislature to limit black voter registration[4]. *PUSH v. Mabus,* 932 F.2d 400, 403 (5th Cir.1991). Before trial, in 1984, the Mississippi state legislature amended the challenged laws and sought dismissal of the *PUSH* suit as moot. *PUSH,* 932 F.2d at 403. PUSH, however, rejected the newly enacted amendments to the challenged laws and still maintained that dual registration and satellite prohibitions persisted with a discriminatory purpose. *Mississippi State Chapter, Operation PUSH v. Mabus,* 717 F.Supp. 1189, 1190 (N.D.Miss.1989). In denying defendants' motion to dismiss, the court determined that "the amended stat-

utes did not completely eliminate either dual registration or the prohibitions on satellite voting or off-site voter registration"[5]. *PUSH,* at 1247. The case, therefore, proceeded to trial where plaintiffs were permitted to continue their challenge under § 2 of the Voting Rights Act, 42 U.S.C. § 1973(a). *PUSH,* 717 F.Supp. at 1190. The court found no discriminatory purpose behind enactment of the challenged statutes, but determined that the laws had a discriminatory impact on black Mississippians, *PUSH v. Allain,* 674 F.Supp. at 1260, in violation of § 2 of the Voting Rights Act. *PUSH,* 674 F.Supp. at 1268.

Rather than award plaintiffs the injunctive relief which they requested, the court afforded Mississippi lawmakers an opportunity to remedy the § 2 violations since a new legislative session was just about to commence. The court then offered four suggestions for changing the existing scheme as the minimum requirements for bringing registration procedures in line with the Voting Rights Act.[6]

1. Plaintiffs also asserted claims under 42 U.S.C. §§ 1971 and 1983, and the Fourteenth and Fifteenth Amendments to the U.S. Constitution. *Miss. State Chapter, Operation Push v. Allain,* 674 F.Supp. 1245, 1247 (N.D.Miss.1987). However, these were not considered; once the court found a violation of plaintiffs' rights under the Voting Rights Act, there was no need to entertain alternative theories.

2. When this lawsuit was filed, to be a qualified elector for all municipal elections, municipal residents were required to register both with the municipal clerk *and* the county registrar. This practice was known as "dual registration". *Push v. Allain,* 674 F.Supp. at 1248–49 (emphasis added).

3. Prior to 1984, electors' names were placed in registration books; the books could not be removed from the county registrar's office, except in rare and time-limited instances; by and large, registration could take place only in the registrar's office, generally located in the county courthouse. *Push v. Allain,* 674 F.Supp. at 1249; *Push v. Mabus,* 932 F.2d 400, 403 (5th Cir.1991).

4. Plaintiffs were eight named individuals and two organizations (Quitman County Voters League and Mississippi State Chapter Operation PUSH, Inc.) suing on behalf of two plaintiff classes certified as: "(1) all black citizens of Mississippi, eligible to vote but not registered, and (2) all black registered voters in Mississip-

pi." *PUSH,* 674 F.Supp. at 1247. Operation PUSH, Inc. ("PUSH") is a non-profit organization involved in "voter registration drives ... designed to increase black opportunities to participate in the political process." *PUSH,* 674 F.Supp. at 1248.

5. While the amended statutes did not entirely eliminate the problems surrounding dual registration and prohibitions on off-site or satellite registration, they were a sharp improvement and indicated the "Legislature's recognition of the restrictive nature of voter registration in Mississippi." *PUSH,* 674 F.Supp. at 1247, n. 1. In the court's opinion, however, the "subject statutes did not go far enough to totally eliminate the restrictive climate encompassing voter registration in Mississippi." *Id.*

6. (1) Make the 1984 amendments retroactive with regard to voters who registered with the circuit clerk prior to 1984 by implementing a procedure to transfer the names of these voters from the registration books of the circuit clerks to the municipal clerks; (2) require mandatory appointment of *all* municipal clerks as deputy county registrars; (3) require circuit clerks to conduct at least one day of satellite voter registration at three polling places in each county supervisor's district each state election year; (footnote omitted) and (4) establish procedures for registering disabled voters. *PUSH v. Mabus,* 932 F.2d 400, 404.

In direct response to the court's suggestions, the state legislature adopted S. 2610, 1988 Miss.Gen.Laws, ch. 350 (codified as amended at Miss.Code Ann. §§ 23–15–14, 23–15–35, 23–15–37, 23–15–39, and 23–15–223 (Supp.1989)). *PUSH*, 932 F.2d at 404. While the bill had met every requirement which the court suggested, it faced objections from PUSH. *Id.* Claiming that the bill was an insufficient remedy, PUSH asked the court to order mail-in registration, voter registration in state and local agencies, and election day registration.[7] *Id.*

Rejecting PUSH's arguments, the court found that S.B. 2610 effectively remedied the § 2 violations of the Voting Rights Act. *PUSH*, 717 F.Supp. at 1192. *PUSH* protested this court's acceptance of the statutory remedy and appealed to the Fifth Circuit. *PUSH*, 932 F.2d at 405. The appeal, however, failed; the Court of Appeals held "that the district court applied the correct legal standards to the legislation and did not abuse its discretion in approving S.B. 2610 as a remedy for the [§ 2] violations." *Id.* at 407. The district court was affirmed in all respects. *Id.* at 413.

## II. CONCLUSIONS

A. *Plaintiffs' Supplemental Motion for Attorneys' Fees and Expenses*

 To recover attorneys' fees under 42 U.S.C. 1988 or 42 U.S.C. § 1973*l* (e), plaintiffs must be prevailing parties. "[N]o fee award is permissible until the plaintiff has crossed the 'statutory threshold' of prevailing party status." *Dahlem v. Denver Board of Education*, 901 F.2d 1508, 1511 (10th Cir.1990) *quoting Texas State Teachers Ass'n v. Garland Indep. School District*, 489 U.S. 782, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Before

he can be said to prevail, a plaintiff must receive at least some relief on the merits of his claim. *Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654, 661 (1987). Even stretching prevailing party status to its outermost limits, the court is of the opinion that plaintiffs simply lack it with respect to this supplemental motion. *Hewitt v. Helms*, 482 U.S. at 759, 107 S.Ct. at 2675, 96 L.Ed.2d at 661. Plaintiffs' supplemental motion is for an award of fees and expenses incurred in pursuing a losing appeal.[8] People who bring losing suits must bear their own attorneys fees. *Palmer v. City of Chicago*, 806 F.2d 1316, 1323 (7th Cir.1986).

Plaintiffs somehow view losing the appeal as a victory; they attempt to derive prevailing status from the Fifth Circuit's pronouncement that "nothing in this opinion prevents PUSH from bringing a future challenge to Mississippi's voter registration procedures." *PUSH v. Mabus*, 932 F.2d at 407. While that statement may have softened the impact of losing the appeal and encouraged plaintiffs, one favorable statement, in an opinion that rejects plaintiffs' argument in totem, does not suffice to render him a prevailing party. *Hewitt*, 482 U.S. at 763, 96 L.Ed.2d at 663, 107 S.Ct. at 2677. Future successful challenges are always possible; however, possible future wins do not convert immediate failures into successes. The fact remains that the Fifth Circuit was not impressed with plaintiffs' claim that enactment of S.B. 2610 had a racially discriminatory purpose.[9] *PUSH*, 932 F.2d at 408. The Court of Appeals concluded that S.B. 2610 established reasonable registration procedures common to many states, *Id.* at 409, and sufficiently remedied the § 2 violations. Accordingly, the district court decision approving S.B. 2610 was affirmed.

---

7. PUSH also sought deputization of lay people to conduct door-to-door registration. *Id.*

8. As explained in the preceding section, PUSH appealed this court's approval of S.B. 2610 as a legislative remedy of § 2 violations. The Fifth Circuit Court of Appeals, however, affirmed this court's decision in every respect.

9. Specifically, the court stated, "What is even more attenuated is PUSH's argument that the failure to enact H.B. 734 ... [a bill containing mail-in voter registration provisions] establishes" the discriminatory intent behind the enactment of S.B. 2610. *PUSH* at 408.

In *Hennigan v. Quachita Parish School Board*, 749 F.2d 1148, 1151–52 (5th Cir.1985), the Fifth Circuit considered the standard for measuring whether a plaintiff has succeeded sufficiently to be a prevailing party, despite a failure to obtain a judgment in his favor. *Jackson v. Stevenson*, 666 F.Supp. 99, 100 (S.D.Miss 1986). According to the *Hennigan* court,

> the first element that must be established by a plaintiff claiming prevailing status is whether, as a practical matter, the plaintiff's goal was achieved.

*Jackson v. Stevenson*, 666 F.Supp. at 101. Because mail-in voter registration has since been adopted into Mississippi law, plaintiffs claim to have prevailed. However, to be prevailing parties for purposes of attorneys' fees, plaintiffs must show that it was plaintiffs' lawsuit that caused defendants to bring about the desired goal. *Hennigan*, 749 F.2d at 1152. Defendants often make unrequired changes of their own accord. *Hennigan*, 749 F.2d at 1153. Whether it is for economic, political, or purely personal concerns is immaterial. *Id.* If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. *Palmer v. City of Chicago*, 806 F.2d 1316, 1322, *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978). *See Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975). Even if the lawsuit was not frivolous "and even if the suit brought about some or for that matter all of the changes in the defendants conduct that the plaintiff[s] had sought," *Palmer*, 806 F.2d at 1323, plaintiffs have not prevailed within the meaning of the statute. Such is the case here. The defendants were not required to enact mail-in voter registration legislation, *PUSH*, 717 F.Supp. at 1192. Nevertheless, the state legislature later passed a bill providing for mail-in voter registration which Mississippi's governor signed on April 1, 1991. *PUSH*, 932 F.2d at 412. The court is of the opinion that the appeal had "little if any effect on final implementation" of mail-in voter registration. *Williams*, 672 F.2d 549. At most, plaintiffs' appeal only heightened the momentum "in a course of action already begun." *Posada*, 716 F.2d at 1076.[10] Given the above, "a civil rights plaintiff may not collect attorneys' fees for demanding that a state officer do what he would have done in any case." *Williams v. Leatherbury*, 672 F.2d 549, 551 (5th Cir.1982), *Posada v. lamb County, Texas*, 716 F.2d 1066, 1072 (5th Cir. (1983) *quoting Coen v. Harrison County School Board*, 638 F.2d 24, 26 (5th Cir.1981).

B. *Plaintiffs' Original Motion for Attorneys' Fees and Expenses and the Amended Motion*

a. Attorneys' Fees Provision

The applicable section of Title 42 U.S.C. § 1973*l* (e) provides that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

b. Prevailing Party Status and the Separate Stages of Litigation

Plaintiffs' motion for attorneys' fees covers services performed in two separate and distinct stages of protracted litigation[11]. It is appropriate to consider them separate-

---

**10.** There was substantial independent support for mail-in registration. *Push*, 717 F.Supp. at 1192. Thus, subsequent enactment of same was not due to plaintiffs' lawsuit asserting that it be statutorily mandated. *Id.* Plaintiffs just happened to "[catch] the train as it was preparing to pull out of the station." *Jackson*, 666 F.Supp. at 101.

**11.** The first stage covers the time period from the filing of the original complaint, March 1, 1984, until the court issued its memorandum opinion on November 16, 1987 (674 F.Supp. 1245). The second stage of the litigation begins immediately after November 16, 1987 and ends with the issuance of the court's July 18, 1989 memorandum opinion adopting "the final report of defendants and enter[ing] final judgment in this matter." *PUSH*, 717 F.Supp at 1193.

ly, "for the purpose of determining whether to award attorneys' fees." *Leigh v. Engle,* 669 F.Supp. 1390, 1416 (N.D.Ill. 1987), *citing Hensley,* 461 U.S. 424, 103 S.Ct. 1933.

### 1) *Stage One Issue*

■ In the initial stage, plaintiffs claimed that dual registration requirements and the prohibition of satellite or off-site voter registration violated § 2 of the Voting Rights Act. The court concluded that a § 2 violation existed. *Push,* 674 F.Supp. at 1268, *aff'd,* 932 F.2d at 413. Therefore, with respect to the first phase of litigation, the court is of the opinion that plaintiffs are prevailing parties within the meaning of 42 U.S.C. § 1973*l* (e). Defendants attempt to diminish plaintiffs' prevailing party status; since the court declined to grant all of the relief plaintiffs had requested, defendants maintain that plaintiffs achieved only partial success[12]. (Def.'s Res.Opp.Pl.'s Motion Attys' Fees and Lit. Exp.'s As Amended at 18–19, 20.) As another example of plaintiffs' sustained losses, defendants recite the court's specific rejection of plaintiffs' claim that the 1984 challenged statutes were enacted for a racially discriminatory purpose; rather than a discriminatory purpose, this court decided that the challenged statutes had a racially discriminatory impact on the plaintiffs in violation of § 2 of the Voting Rights Act[13]. *Id.* at 1260–61. Characterizing plaintiffs' success as limited, defendants argue that the product of any fee award calculation for services rendered in the initial stage of the lawsuit should be reduced[14]. The court is not in agreement. While defendants correctly state that plaintiffs were denied a substantial portion of the relief they sought to obtain and failed to prove that the challenged statutes were enacted

with a racially discriminatory purpose, "a plaintiff who has won substantial relief should not have his attorneys' fees reduced simply because the district court did not adopt each contention raised." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 55 (1983). It is not necessary for a plaintiff to win all of the relief requested before he is a "prevailing party" under this section; the focus is more on the generalized question of whether he has accomplished the objective of his litigation. *Ohland v. City of Montpelier,* 467 F.Supp. 324, 349 (D.Vt.1979). The primary objective behind plaintiffs' initial lawsuit was to establish a § 2 violation of the Voting Rights Act. Since they succeeded in meeting this objective, plaintiffs are entitled to a reasonable attorneys' fees award for legal services in stage one. Furthermore, defendants have not persuaded the court that a reduction in the final reasonable fee, once calculated, is warranted. With respect to awarding attorneys' fees for services rendered in stage two of the litigation, however, the court holds a different view.

### 2) *Stage Two Issue*

■ Defendants also object to plaintiffs' request for attorneys' fees generated by the challenge PUSH lodged against the remedial legislation enacted by the Mississippi legislature. In the second tier of the litigation, this court concentrated on the narrow issue "of whether the 1988 legislation serves to eliminate the discriminatory impact of prior restrictive voter registration procedures," *PUSH,* 717 F.Supp. at 1192, thereby curing the § 2 violations it had found earlier in its prior opinion. *Id.* at 1193, *see PUSH,* 674 F.Supp. at 1268–

---

**12.** "Considerations of comity and equity" led this court to deny plaintiffs' request for injunctive relief. *Push,* 674 F.Supp. at 1270. Instead, the court ordered the defendants to devise some measure that would comply with the court's opinion. *Id.*

**13.** Plaintiffs imprecisely state that the court found a racially discriminatory purpose behind enactment of the challenged statutes. *See* Pl's Memo Supp.Atty's Fees Award, p. 2. On the contrary, the court found that the challenged

statutes were not enacted for a racially discriminatory purpose but have had a discriminatory impact on the certified plaintiff class. *Push,* 674 F.Supp. at 1260–61, *aff'd,* 932 F.2d at 404. In fact, the court noted that "a similar impact is in all probability suffered by whites of low socio-economic status ..." *Id.* at 1255.

**14.** The specific formula used to arrive at an award of attorneys' fees will be discussed later in this opinion.

1269. The court held that the newly adopted legislation addressed the four deficiencies cited in the earlier opinion and eliminated the two most apparent violations in the old 1984 enactments which PUSH had originally contested: "all vestiges of dual registration have been entirely removed and the restrictions against satellite registration have been replaced by mandatory quadrennial satellite registration[15]." *PUSH,* 717 F.Supp. at 1193. Nevertheless, PUSH lodged a new claim of discrimination; the voting rights organization contended that discrimination was behind the Mississippi legislature's passage of the remedial measure. *Push,* 717 F.Supp. at 1192. Essentially, PUSH asked the court "to reject the changes adopted by the State of Mississippi and to presume—without [a kernel of] proof to support such a proposition—that the newly enacted registration procedures [would] have no effect on the disparity between black and white voting registration levels." *Id.* The court rejected plaintiffs' claim since "plaintiffs [had] offered no persuasive proof to support their bald contention that the 1988 legislation is statutorily defective (footnote omitted)." *Id.*

Considering that their claim against the remedial measure was completely rejected, plaintiffs' attorneys' fees request for services rendered in the second stage of this case is especially troublesome to the court. PUSH accomplished nothing in this round of litigation; since plaintiffs achieved no further advances at this level, the court is of the opinion that plaintiffs are not entitled to recover attorneys' fees for work performed in this segment of the lawsuit. The court agrees in principle that the plaintiffs are entitled to a fee award when they prevail on "any significant issue in litiga-

tion which achieved some of the benefit the parties sought in bringing the suit." *Texas State Teachers Assn. v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989), *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). However, in bestowing prevailing party status upon plaintiffs, the court must also consider the extent of plaintiffs' success as a critical factor "in determining the proper amount of an award." *Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 257 (5th Cir.1990), *quoting Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943. "While plaintiffs may be entitled to a fee, they are not automatically entitled to a fee for *all* services, necessary or not, that counsel performed." *Rendon v. A.T. & T. Technologies,* 883 F.2d 388, 399 (5th Cir.1989) (emphasis added). As the Supreme Court stated in *Hensley,*

> hours spent on ... unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee ... where the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the result obtained. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. *Hensley,* 461 U.S. at 440 [103 S.Ct. at 1943], 76 L.Ed.2d at 54. When a plaintiff has achieved only partial or limited success, the product of hours reasonably expended [multiplied by] a reasonable hourly rate may be an excessive amount. This will be true even [in instances] where the plaintiffs' claims are [somehow] interrelated ... Again,

---

**15.** The court specifically noted that the "remedial legislation enacted by the defendants addresse[d] each of the four deficiencies" which the court had earlier found in its preceding opinion (*see PUSH,* 674 F.Supp. at 1268). *PUSH,* 717 F.Supp. at 1191. The 1988 measure "made the following changes to Mississippi's voter registration procedures: (1) the 1984 changes were made retroactive, Chapter 350, § 1; (2) all municipal clerks were deputized as county voter registrars, Chapter 350, § 4; (3) satellite registration [was now] required to be conducted in

at least three voting precincts in each supervisory district in the county, or in every precinct in the event that a supervisory district has fewer than three precincts, Chapter 350, § 2; (4) provision [was] made for registration of disabled voters in their homes, Chapter 350, § 2; and (5) the county registrar [was now] required to keep extended office hours for the five days preceding the thirtieth day prior to any regularly scheduled primary or general election, Chapter 350, § 2." *Push* at 1192.

the most [crucial] factor is the degree of success obtained.

*Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. Plaintiffs have requested nearly one million dollars in attorneys' fees. A substantial portion of that fee request stems from hours submitted for work relating to stage two of the litigation; during this phase, plaintiffs reaped no additional benefits and cannot claim success. Accordingly, these hours are omitted entirely from the court's computation of a reasonable attorneys' fees award.

### c. Plaintiffs Specific Award Request and the Method of Computation

#### 1) *The Lodestar Method*

Having established that plaintiffs are entitled to attorneys' fees for their work in stage one of the litigation, the court now addresses the appropriate method of computation. The court will determine the amount of reasonable attorneys' fees under the standard method. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Blum v. Stinson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 895 (1984); *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40, 76 L.Ed.2d at 50. This equation is known as the "lodestar" approach. The court's initial calculation yields a lodestar figure, which may then be adjusted upward or downward. *Blum v. Stinson,* 465 U.S. at 888, 104 S.Ct. at 1544, 79 L.Ed.2d at 895–96. "The amount of attorney's fees awarded plaintiffs, however, should be based only upon the work performed on the issues on which they were successful." *Familias Unidas v. Briscoe,* 619 F.2d 391, 406 (5th Cir.1980) *quoting, Nadeau,* 581 F.2d at 278. Furthermore, fees should not be allowed for hours which were not reasonably expended, i.e., hours which are excessive, redundant, or unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939, 76 L.Ed.2d at 50.

#### 2) *The Johnson Factors*

In determining a reasonable attorney's fee, the court must consider the twelve *Johnson* factors [16] and explain the basis for the award. The awarding court is to consider these twelve factors in light of the following directions:

(1) Ascertain the nature and extent of the services supplied by the attorney;

(2) Value the service according to the customary fee and quality of the legal work; and

(3) Adjust the compensation on the basis of the other *Johnson* factors that may be of significance in the particular case.

*Copper Liquor, Inc. v. Adolph Coors Co.,* 684 F.2d 1087, 1092 (5th Cir.1982). The result of multiplying (1) and (2) is the "lodestar." *Nisby v. Commissioners Court of Jefferson County,* 798 F.2d 134, 136 (5th Cir.1986). The lodestar may then be adjusted once the district court considers the applicable remaining *Johnson* factors. *Nisby,* 798 F.2d at 136.

*Shirley v. Chrysler First, Inc.,* 763 F.Supp. 856, 857 (N.D.Miss.1991).

#### 3) *Time and Labor Reasonably Required*

PUSH, et al. request a total award of $933,663.28 in attorneys' fees, paralegal costs and litigation expenses, including a one hundred percent contingency enhancement on the attorneys' fees request [17]. The fees are sought by a consortium of seven attorneys and ten paralegals. Two of the seven attorneys, Judith Reed and Patricia Hanrahan, together claim fifty-nine percent of the total attorney hours submitted [18]. Plaintiffs' itemized account was submitted in the following fashion:

---

**16.** *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). Because these factors are well known to every practicing attorney in this circuit, the court finds no reason to enumerate them here; each factor will be considered in due course.

**17.** The amended figure of $933,663.28 was increased from $886,284.85, the amount originally requested in plaintiffs' motion for an award of attorneys' fees and litigation expenses.

**18.** The hours expended are apportioned according to attorneys rather than individual projects, tasks or assignments.

## ATTORNEYS

| Attorney | Total Hours | Hourly Rate | Lodestar | 100% Enhance | Total |
|---|---|---|---|---|---|
| Parker | 305.5 | $175.00 | $ 53,462.50 | $ 53,462.50 | $106,925.00 |
| Guinier | 45.9 [19] | $175.00 | $ 8,032.50 | $ 8,032.50 | $ 16,065.00 |
| Reed | 798.9 | $165.00 | $131,818.50 | $131,818.50 | $263,637.00 |
| Bixler | 266 | $165.00 | $ 43,890.00 | $ 43,890.00 | $ 87,780.00 |
| Issach. | 494.2 | $135.00 | $ 66,717.00 | $ 66,717.00 | $133,434.00 |
| Karlan | 29.6 | $110.00 | $ 3,256.00 | $ 3,256.00 | $ 6,512.00 |
| Hanrahan | 832.9 | $100.00 | $ 83,290.00 | $ 83,290.00 | $166,580.00 |

**Total enhanced lodestar attorney fee request** **$780,933.00**

## PARALEGALS

| Paralegal Lw.Stdnt. | Total Hours | Hourly Rate | Lodestar | Total |
|---|---|---|---|---|
| Fisher | 399.6 | $ 35.00 | $ 13,986.00 | $ 13,986.00 |
| Gill | 221.4 | $ 35.00 | $ 7,749.00 | $ 7,749.00 |
| Krislov | 245.2 | $ 35.00 | $ 8,582.00 | $ 8,582.00 |
| Wilkinson | 108.3 | $ 35.00 | $ 3,790.50 | $ 3,790.50 |
| Schanzer | 181 | $ 35.00 | $ 6,335.00 | $ 6,335.00 |
| Bauer | 4 | $ 35.00 | $ 140.00 | $ 140.00 |
| Moore | 213.1 | $ 35.00 | $ 7,458.50 | $ 7,458.50 |
| Prinz | 95.5 | $ 35.00 | $ 3,342.50 | $ 3,342.50 |
| James | 104.5 | $ 35.00 | $ 3,657.50 | $ 3,657.50 |
| Secoy | 155 | $ 35.00 | $ 5,425.00 | $ 5,425.00 |

**Total paralegal/law student fee request** **$ 60,466.00**

---

## EXPENSES

Plaintiffs also request an award for litigation expenses in the amount of $92,264.28. The expenses were incurred by the lawyer's committee and the legal defense fund. The expenses have been itemized as follows:

| Expenses | Lawyers' Committee | Legal Defense Fund |
|---|---|---|
| Copying | $11,987.40 | $ 122.50 |
| New Copying (for fee motion) | 379.69 | |
| Overnight Mail/ Courier Service | 1,834.38 | 792.78 |
| Depositions | 5,357.80 | |
| Travel, Meals, Lodgings | 22,267.19 | 7,265.40 |
| Postage | 570.27 | |
| Long Distance Telephone Charges | 4,038.88 | |
| Court Costs (Service of Process, Filing Fees) | 358.00 | 5.50 |
| Expert Witness | 21,964.71 | 6,592.50 |
| Lay Witness | | 395.68 |
| Research | 4,481.60 | 3,850.00 |
| **TOTALS** | **$73,239.92** | **$19,024.36** |
| **Total Enhanced Lodestar Request** | | **$780,933.00** |

**19.** Plaintiffs have miscalculated Guinier's hours; an accurate tabulation totals 47.4.

| | |
|---|---|
| Total Paralegal/ Law Student Fee Request | 60,466.00 |
| Litigation Expenses Request | 92,264.28 |
| Total Award Request | $933,663.28 |

 A party requesting attorneys' fees bears the burden of proving his entitlement to the fees. *Johnson*, 488 F.2d at 720. The court's task is to determine the hours reasonably expended. The court should be guided by amounts that the attorney would bill to his own client. *Johnson*, 488 F.2d at 720. Furthermore, the court can deny an award for hours expended when the court cannot tell from the submission exactly what services were performed. *Henry v. First National Bank*, 603 F.Supp. 658, 664 (N.D.Miss.1984). The plaintiffs claim to have expended 4,500.60 hours in this cause; the time is categorized according to individual attorney or paralegal. Many of these hours are duplicative, unnecessary and excessive; others are simply nonrecoverable.

a. attorneys

The court has reviewed the time sheets submitted by each attorney and paralegal. Those hours that pertain to stage 2 of the litigation come off the top, due to the absence of success. Using its discretion, the court has further reduced individual hours submitted where appropriate. The time submissions of each of the seventeen would-be recipients are considered in turn by the court.

*Frank R. Parker*

As indicated in the table, Frank R. Parker claims 305.5 hours expended in rendering legal services. Defendants object to 72.75 hours as falling between the time frame referred to by the court as stage 2. The objection is well taken, and therefore 72.75 hours come off the top of Parker's submissions.[20] Defendants also object to four hours claimed for a motion to amend. In response to defendants' objection, plain-

tiffs assert that "it was defendants' counsel's refusal to stipulate to the correct figure that required plaintiffs' counsel to file this motion and to expend this time researching the exhibits ... as well as drafting the motion." (Pls.' Rebuttal Memo. in Support of Their Motion for an Award of Attys.' Fees and Expenses, Appendix A, p. 1.) Some resistance is to be expected in adversarial proceedings. An opposing party's reluctance or unwillingness to stipulate to certain facts does not excuse excessive hours. The court is of the opinion that two hours was sufficient time to properly prepare a motion to amend. Furthermore, due to a general lack of detail throughout Parker's time submissions, the court is of the opinion that a reduction of hours of the lodestar is in order. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939 ("where the documentation of hours is inadequate, the district court may reduce the award accordingly."). Where possible, the court has in several instances reconstructed hours to compensate for scant and inadequate time sheets. It should not be forgotten, however, that the burden of proof of a reasonableness of a number of hours is on the fee applicant, *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. An additional seven hours, therefore, are deleted from Parker's time submissions. 223.75 is a reasonable amount of hours expended by attorney Parker.

*Judith Reed*

 Judith Reed claims a total of 798.9 hours expended in rendering legal services. As with Mr. Parker, a portion of hours comes off the top; in Reed's case, 137.9 hours are eliminated initially. Further reductions include time submitted for attending depositions; 19.2 hours are disallowed

---

**20.** The court also notes that Parker's time submissions indicate needless multiplicity of counsel in the preparation of witnesses. Specifically, the court is concerned with entries dated during early and mid-July. However, discussion is reserved on this matter until later in this opinion.

as duplicative and unnecessary with respect to attendance at depositions. No more than one lawyer should appear for the plaintiffs at a deposition of a witness. *In Re Continental Illinois Securities Litigation*, 572 F.Supp. 931 (N.D.Ill.1983).

Defendants specifically object to 13.9 of Reed's hours as previously compensated by the Magistrate in a $600 award, May 12, 1987, which defendants satisfied on June 16, 1987 [21]. To avoid a dual award, these hours are excluded from the court's lodestar calculation.

Hours falling within the time frame of October 15, 1986 through November 5, 1986 are contested as duplicative, unnecessary and excessive. These hours are unsubstantiated and amount to a series of circuitous calls and meetings [22]. The court also excludes hours claimed for teleconferences with witnesses as duplicative and unnecessary. The hours Reed claims for witness teleconferences during July 6 through July 13, 1987 match up with Frank Parker's entries for the same task. When more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. *Johnson*, 488 F.2d at 717. The time of two or three lawyers in conference when one would do, may obviously be discounted. *Johnson*, 488 F.2d 714, 717.

While on the subject of teleconferences, the court notes that Reed's time sheets largely consist of amorphous billing entries for teleconferences and meetings with a host of attorneys, primarily Patricia Hanrahan. Common to both Hanrahan's and Reed's time sheets is a complete failure to state or "make any reference to the subject discussed at a meeting or teleconference." *In re Olson*, 884 F.2d 1415, 1428 (D.C.Cir. 1989). "This defect in adequate record keeping" is worth special note considering that Hanrahan and Reed have billed the most hours [23]. While the incidents are too vast to recount in this opinion, examples of imprecise documentation are highlighted below [24]." With such inadequate descriptions, the court cannot "determine with a high degree of certainty," as it must, that the billings are reasonable. *In re Olson*, 884 F.2d at 1429, *quoting, United Slate, Tile & Composition v. G & M Roofing*, 732 F.2d 495, 502, n. 2 (6th Cir.1984) (Supporting documentation "must be of sufficient detail and probative value to enable the court to determine *with a high degree of certainty* that such hours were actually and *reasonably expended ...*") (emphasis added). Where the documentation is inadequate, or consists of recently compiled retrospective estimations of time expended, "the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value." *Id.* Therefore, the court must estimate the reduction to be made because of such insufficient documentation. *In re Olson*, 884 F.2d at 1429. Aside from lacking proper documentation, the hours Reed claims are excessive. *See Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir.1988) ("Redun-

---

**21.** Reed submits a total of 13.9 hours for: May 2, July 25 and 29, August 1, and October 4, 1985. The hours are attributed to a motion to compel admissions.

**22.** In some instances, the descriptions are nothing more than: SETTLEMENT PROPOSAL, TELECON W/ SAM RE: SAME. Reed's time sheets list repetitive teleconferences with Sam; when not teleconferencing Sam, Reed is meeting Sam re: settlement. After a number of teleconferences with Sam, Reed then meets with Sam & Lani; after meeting with Sam and Lani, Reed has another teleconference with Sam. After the latest teleconference, Reed and Sam hold another meeting; this time Frank also attends. No sooner has Reed met with Sam, when she has two more "teleconferences with Sam re: same." *See* Pl.'s Ex.'s Supp. Atty's Fees/Exp.'s, exh. 2 (Reed time sheets, p. 6). Wheels may

have been spinning, or in this case, telephone dials, but from looking at these time sheet entries, apparently no ground was covered. Therefore the 23.9 hours claimed between October 9, 1986 and November 5, 1986 are disallowed.

**23.** Hanrahan claims 832.9 hours and Reed claims 798.9.

**24.** Tc w/ Sam re litig strategy, etc.; tc/w sam; tcw/ Pat H; mtg w/ Pat H, Lani; tel calls; tel conv; conf call w/ pat re: strategy; conf. w/ lani re: case strategy; tel conv. w/ PH re: status conf.; call w/Hubby. A string of these and other similar entries appear repeatedly throughout thirteen pages of time sheets. (Pl.'s Amnd. Atty.'s Fees Motion, Appendix A, p. 1–13).

dant hours generally occur when more than one attorney represents a client."). All seven of the attorneys, especially Hanrahan and Reed, engaged in a plethora of undefined or simply denoted "strategy" conferences, telephone or otherwise. These "strategy" and other conferences "consumed the time of several attorneys who bill at very high rates." *In re Olson*, 884 F.2d at 1429. The hourly rates requested "are of such magnitude" so as to indicate that "the attorneys should have been able to decide on proper strategy" and other matters without the inordinate teleconferencing and meeting that took place incessantly. *Id., see Norman*, 836 F.2d at 1302. Thus, even if Reed had kept and submitted better records, a reduction of hours would still be compelled on the basis of redundancy and excessiveness. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. *See Beaumon v. City of Ridgeland, Miss.*, 666 F.Supp. 937, 942 (S.D.Miss.1987) (court cut by one-half hours claimed for numerous conferences as excessive.) Based on the preceding discussion and authority, the court further reduces Reeds insufficiently documented, excessive, and redundant hours by fifty-five percent. The court fixes 271.8 as a reasonable number of hours [25].

*Patricia Hanrahan*

Patricia Hanrahan has also submitted an immoderate amount of hours for teleconferences, meetings, and strategy sessions; the extent of teleconferencing time Hanrahan claims is even greater than that of Reed and represents the bulk of her activity. The court can only imagine what these teleconferences and strategy meetings concerned, given that Hanrahan's entries, like Reed's are void of even the slightest description or clue as to what these calls were about [26]. What, if any, significant role Hanrahan played in the litigation is completely indecipherable. As explanation for these countless teleconferences (some as long as four and five hours each), plaintiffs say that "conferences and telephone conversations with co-counsel and the plaintiffs were required by the complexity, novelty, and difficulty of the issues." (Pl.'s Rebut.Mem.Supp.Atty.'s Fees Award, Appendix A, p. 3.) The court recognizes that the case "was ... important, protracted ... and unique"; nevertheless, the court finds that the number of conferences was excessive. *In Re Olson*, 884 F.2d at 1429, and a portion will be excluded as "excessive, redundant or unnecessary." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. A district court should not accept faulty records with no reduction of the hours of the lodestar after recognizing the deficiencies. *Leroy v. City of Houston*, 831 F.2d 576, 585 (5th Cir.1987). In *Leroy*, the Fifth Circuit Court of Appeals reversed a one million dollar district court award of attorneys' fees in a voting rights case and ordered a fee reduction of nearly seventy percent. *Id.* at 586. " '[W]here the documentation of hours is inadequate, the district court may reduce the award accordingly.' " *Leroy*, 831 F.2d at 586, *quoting Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. For a district court "[t]o award $1 million in attorneys' fees and expenses [would be] excessive and an abuse of discretion." *Leroy*, 831 F.2d at 586.

Hanrahan's time sheets consist of page after page of teleconference entries. A substantial amount of her calls are to the other six attorneys. When more than one

25.

| | | |
|---|---|---|
| hours submitted | 798.9 | |
| stage two hours | −137.9 | |
| | 661.0 | subtotal |
| duplicative deposition attendance | − 19.2 | |
| | 641.8 | subtotal |
| previously satisfied hrs. | − 13.9 | |
| nonproductive/unnec. settlement hrs. | − 23.9 | |
| | 604.0 | subtotal |
| 55% reduction | −332.2 | |
| reasonable hours | 271.8 | **Total** |

26. A sample of the teleconference entries include: "telecon republic airlines"; "telecon North Carolina"; "telecon Kentucky"; "telecon Florida"; "telecon South Carolina"; "telecon Public Welfare Association"; and "telecon Center for Disease Control".

attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. *Johnson*, 488 F.2d at 717. Generally, attorneys should work independently, without the constant "conferring" that so often forms a major part of a motion for attorneys' fees "in all but the tiniest of cases" and has become a trademark of this case. *In Re Continental Illinois Securities Litigation*, 572 F.Supp. at 933. The sheer excess and frequency of these random calls smacks of inefficiency and waste. Conferences should be held only when necessary, which should not be very often. *Id.* It was Hanrahan's practice to have multiple conferences often without necessity[27]. Moreover, "there should be a statement, albeit very brief, of specifically what was discussed and what conclusion was reached." *In Re Continental Illinois Securities Litigation*, 572 F.Supp. at 935. The burden of proof of the reasonableness of hours spent is on the fee applicant. *Leroy*, 831 F.2d at 586, *quoting Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941. In keeping with *Hensley* and *Leroy*, the court reduces Hanrahan's 832.9 hours by sixty-five percent or 541.39 hours. Because it is appropriate to distinguish between legal work, in the strict sense, and other work which can often be accomplished by non lawyers, *Johnson*, 488 F.2d at 717, the court also excludes a spread of five and one-half hours attributed to a February 8, 1985 entry claiming four and one-half hours for "press release and press conference and mail" and one hour for "telecon re: press conference", "telecon CBS" and "telecon Judith Reed re: CBS" on 12/11/85 as noncompensable. In the same vein, hours submitted for reading the reports of other attorneys, and "gathering documents for travel" are reduced by three hours. Additionally, five hours of time claimed are excluded as expended on a separate and unrelated case[28]. An additional 6.7 hours claimed for February 20, 1986 are deleted as duplicative; these hours, described as "interviewing Louis Armstrong", "interviewing Benny Thompson", and "interviewing Myrtis Foster and George Hooper", are also claimed by Barry Fisher. (Pl.'s exh.'s Supp.Motion Atty.'s Fees, exh. # 6, p. 2, Def.'s exh.'s resp. opp. pl.'s atty.'s fees lit. exp.'s, exh. B p. 2.) The court is of the opinion that 271.32 is a reasonable amount of hours claimed under these circumstances.

### Sidney Bixler

Sidney Bixler requests 266 hours on time sheets that provide little in the way of detail or explanation. His entries mainly consist of "investigation", "research", "calls to co-counsel" and "conference with co-counsel". One entry claiming two hours simply reads, "five calls." Others are listed only as "calls." In light of the court's previous discussion concerning inadequate documentation, a reduction of hours is fitting. Furthermore, investigative services are not legal services, even when performed by an attorney. *See Johnson*, 488 F.2d at 717. Eighteen and one-half hours are claimed for conferences with clients on November 2 and 3, 1983. A fifty percent reduction of the hours submitted is appropriate.

### Samuel Issacharoff

Issacharoff requests 494.2 hours. Initially, 16.8 hours are taken off the top as incurred during stage two of the litigation.

---

27. These excerpts from Hanrahan's time sheets typify her billing submissions as a whole: 7/27/84 "meeting with Lani and interns re: strategy"; 7/27/84 "legal defense fund meeting"; 10/22/85 "telecon Judith Reed re: strategy"; 10/24/85 "conference with Samuel Issacharoff and Barry Fisher"; 11/5/85 conference Lichtman, O'Hare, Fisher, Issacharoff; 11/14/85 "confer Samuel Issacharoff, Judith Reed, Barry Fisher"; 11/4/85 "confer Judith Reed"; 11/19/85 "reading Barry Fisher's report and confer with Barry Fisher"; 12/2/85 telecon Sam McCray; 12/2/85 telecon Steve Hahn and Sam Issacharoff; 12/4/85 "lunch meeting with Martin Buchanan"; 12/4/85 "conference with Martin Buchanan". (Pl.'s Exh.'s Supp. Motion Atty.'s Fees Lit. Exp.'s, exh. 5)

28. Hanrahan had claimed five hours for "travel to and from Richmond, Va." and for "attendance at oral argument" in the case of *Collins v. City of Norfolk*, 768 F.2d 572 (4th Cir.1985). When defendants objected to the inclusion of these hours as inappropriate, plaintiffs agreed and claimed that the time had "erroneously been included" and should be omitted.

The balance of hours, 477.4 is reduced by forty-five percent to 262.57 hours to arrive at a reasonable number of hours.

The reduction of hours is exercised given the inadequate documentation of the time Issacharoff claims. *See Leroy*, 831 F.2d at 584. One entry for February 11, 1986 actually reads, "Conference with Pat Hanrahan and Barry Fisher re: preparation ?". When Mr. Issacharoff has no inkling of what his calls or preparations concern, how does he expect the court to know? There is no excuse for expecting a court to award fees on the basis of unsupported claims of time expenditures.

> [A]ny attorney who hopes to obtain an allowance from the court should keep accurate and current records, of work done and time spent. Lawyers are well aware that ... they are valued principally on the basis of time required.

*United Slate*, 732 F.2d at 502, *quoting, In Re Hudson & Manhattan R.R. Co.*, 339 F.2d 114, 115 (2d Cir.1964). Of particular concern to defendants is the time claimed during September and October, 1986 for services in connection with a requested deposition of Secretary of State Dick Molpus. Defendants correctly state that the issue of whether Molpus could be deposed had been decided by the Magistrate in a protective order, entered on April, 1986. This inconsistency casts doubt, defendants argue, "on the basic accuracy of his time entries." (Def.'s Resp.Opp.Pl.'s Atty.'s Fees Motion, p. 28). In rebuttal, Issacharoff states that the discrepancy is due to a clerical error; the year of services should have been listed as 1985, not 1986. (Pl.'s Rebut.Memo.App. "A", p. 4.) Even accepting this explanation as true and thus overlooking the mistake, the court is still of the opinion that Issacharoff failed to maintain adequate records of his time. Besides lacking proper documentation, many of the hours claimed arise from unnecessary, excessive, redundant and duplicative calls and conferences with co-counsel. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

*Pamela Karlan*

Pamela Karlan has requested compensation for 29.6 hours. Initially, 10.6 hours are excluded as generated during the litigation's unsuccessful stage two. Of the nineteen hour balance, 12.3 hours claimed for discussions and conversations of an unspecified nature with Judith Reed are excluded as "unnecessary, excessive, redundant and duplicative." *Id.* The remaining 6.7 hours are reasonable in the case of attorney Karlan.

*Lani Guinier*

In determining the reasonable amount of hours Lani Guiner submits, the court excludes 10.9 hours as expended in stage two of the litigation, leaving a balance of 36.5. An additional 5.1 hours are excluded for unnecessary and excessive strategy calls and conferences, and time billed for "explaining federal jury procedure" to fellow attorney Pat Hanrahan (Guinier Aff., Appendix B, p. 1); in the court's estimation, time expenditures of this sort are properly categorized as training, and therefore, nonbillable. Of the 47.4 hours requested, 31.4 are reasonable.

b. paralegals/law students

A total of 1,727.6 hours are claimed by the ten paralegals/law students ("paralegals") associated with this case. In requesting that the court deny paralegal fees, defendant's cite *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) for the proposition that local custom in the relevant legal community controls whether a separate award for paralegal hours is appropriate. Defendants argue that attorneys do not customarily bill out paralegal services separately in Mississippi[29]; therefore, they say, no award for paralegal services should issue.

---

**29.** To support their claim, defendants rely on a survey of billing practices among Mississippi lawyers published in the Mississippi Lawyer. "Mississippi State Bar Membership Survey Results," THE MISSISSIPPI LAWYER, Mar.–Apr. 1989, at 45. Of those attorneys responding, 52.4% answered "No" to the question, "Do you bill for legal assistants/paralegals?"

(Def.'s Resp.Opp.Pl.s Atty.'s Fees Motion, p. 33). The court does not agree. The court, without disputing the results of the survey, notes that it is generally the prevailing practice in this district to bill separately for paralegal work. *Martin v. Mabus*, 734 F.Supp. 1216, 1226 (S.D.Miss. 1990). On the other hand, purely clerical or secretarial tasks, performed by whomever, are overhead and customarily included in the attorney's hourly fee. *Id.*

### Kathryn Prinz

Kathryn Prinz claims 95.5 hours. Because all of this time was expended performing work for an expert, the hours are noncompensable and must be excluded. *See International Woodworkers of America v. Champion International Corporation*, 790 F.2d 1174 (5th Cir.1986) (en banc), *aff'd sub nom. Crawford Fitting Company v. J.T. Gibbins, Inc.* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The *Woodworkers en banc* holding applies not just to expert's time and effort on the stand "but to all of his work." *Shipes v. Trinity Industries, Inc.*, 685 F.Supp. 612, 614 (E.D.Texas 1987). "It would be disingenuous to hold that *Woodworkers* prohibits the taxation of the statistical expert's fee, but still permit the award of fees for others, who were retained to prepare the expert witness." *Shipes*, 685 F.Supp. at 614.

### Barry Fisher

Similarly, 19.7 hours are excluded from the 399.6 hours Barry Fisher claims as time spent on work for experts. *Shipes*, 685 F.Supp. at 614. An additional 24.6 hours are omitted as time expended performing clerical tasks such as filing and typing. Such tasks are considered as overhead costs and figure into the overall hourly attorney rate along with a margin for profit. *Martin*, 734 F.Supp. at 1226.

The balance of 355.3 is reduced by 25% (88.83) due to deficiencies in the billing records, *See Leroy*, 831 F.2d at 585, and duplication of effort. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. A total of 266.47 hours is reasonable.

### Roger Moore

In examining the hours submitted by Roger Moore for reasonableness, the court has determined that the amount of time claimed is excessive. For instance, Moore claims 39.3 hours for reading Supreme Court cases on collateral estoppel; he also lists 5.3 hours for a search for sources on collateral estoppel; over eight hours are listed as spent reading "relevant case background"; for writing a "general introduction to collateral estoppel", Moore tabulates 11.4 hours; these collateral estoppel entries alone amount to fifty-six hours, of which the majority were spent learning about collateral estoppel. Expending some time familiarizing or reacquainting oneself with a particular issue or subject of law is somewhat understandable. In the same vein, the court is aware that Moore was a summer intern who had recently completed his first year of law school; however, attempting to master collateral estoppel is something that should be accomplished at one's own expense, rather than at the expense of a fee paying client. Accordingly, the time Moore submits for collateral estoppel is excluded as excessive and unnecessary. Also excessive are the 36.2 hours assigned to a "memo rewrite"; accordingly, these hours are reduced to 16 hours, leaving 64% of the time claimed, or 136.4 hours; the court views this as a reasonable sum.

### Marvin Krislov

A total of 242 hours are requested by Marvin Krislov [30]. As with the majority of the time claims previously discussed, these hours are also recorded for unidentifiable work. The entries are largely for "research and writing brief" or "memorandum of law." Plaintiffs rebuttal memorandum sheds no further light on these entries; informing the court that Krislov's work "was very helpful to plaintiff's counsel"

---

30. Plaintiffs, acknowledging an erroneous inclusion of 3.2 hours from another separate and unrelated case, voluntarily lowered the amount from 245.2 hours originally submitted.

(Pl.'s Rebuttal Memo, at 21) does nothing to assist the court in assessing the reasonableness of the hours. For instance, ninety-eight hours are claimed for "research and writing brief." In the court's estimation this is an unreasonable amount of time to expend on the sole project of a brief. Therefore, the court fixes a generous fifty-five hours as a reasonable time for work on the unspecified brief, allowing compensation for a total of 199 hours.

### Lucia Gill

The court excludes 92.1 of the hours Gill submits as clerical and or secretarial tasks factored into the attorneys' fees as overhead. *See Martin v. Mabus,* 734 F.Supp. at 1226. Thus, the request of 221.4 hours is reduced to 129.3 hours and represents a reasonable amount.

### Kristin Bauer

For summarizing depositions, Bauer submits a total of four hours; this is a reasonable amount for the work performed.

### Robert Wilkinson and David Schanzer

Of the 181 hours David Schanzer claims, eight are omitted as clerical and part of overhead. A further reduction of ninety-nine hours is exercised for trial preparation and assistance as duplicative. It was unnecessary to have three paralegals assisting at trial with three attorneys present. With a total of six paralegals and attorneys in the courtroom, the proper utilization of time should be scrutinized. *Johnson,* 488 F.2d at 717. Using three paralegals when one would be sufficient is grounds for discounting the duplicative time. *Id.* To account for the overload of hours, Schanzer's hours are reduced to seventy-four. On the same note, Wilkinson's time claims are substantially reduced by 105.6 hours; 2.7 hours are allowed.

### Deborah James and Eric T. Secoy

Despite listing a total of 259.5 hours for James and Secoy, nothing in either plaintiffs' (or defendants') exhibits or memoranda discusses or documents any of this claimed time. Without any time sheets or documentation whatsoever, the court is unable to assess the request of hours for either of the above paralegals; therefore the hours are excluded from the overall computation.

### 4) Reasonable Hourly Rate

"After an exhaustive, item-by-item review" of the time sheets submitted for seventeen attorneys and paralegals representing plaintiffs in this case, the court has determined the number of total hours which are compensable and reasonable[31]. *Martin,* 734 F.Supp. at 1229. The next step is to set a reasonable hourly rate. *Beaumon,* 666 F.Supp. at 943. This court values the services according to the customary fee charged in this district for similar services. *Henry,* 603 F.Supp. at 666, and the quality of work. *Copper Liquor, Inc. v. Adolph Coors Co.,* 624 F.2d 575, 583 (5th Cir.1980). Drawing upon its own experience and observations during the trial, and its past awards of attorneys' fees, the court is of the opinion that $115 is a reasonable hourly rate for the services of Mr. Parker; $100 is a reasonable rate for the work of Sidney Bixler; $105 is a reasonable rate for Judith Reed and Lani Guiner; $90/hr. is reasonable for Samuel Issacharoff and $80/hr. is reasonable for Pamela Karlan and Patricia Hanrahan. Paralegal services are compensated at the rate of $35/hr.

### 5) Lodestar Amount Awarded

The court multiplies reasonable hours expended by the reasonable hourly rate to obtain the lodestar figure. The lodestar amount for each party is as follows:

---

**31.** Keeping time by activity or project is a preferable way for a group of lawyers to show the worth of their combined services. *In re Continental,* 572 F.Supp. at 935. Recently, attorneys for plaintiffs in *Echols v. Parker,* Civ. Action No. GC 86–168–D–O utilized this method, and the contributions of the various attorneys were broken down and readily identifiable. While "the alternative—and regrettably, the tradition" of listing time by individual attorneys and paralegals may help "obscure the existence of duplication and excessive or unnecessary expenses," courts will still conduct a thorough review of the submissions and can easily cross-reference the documents, thereby detecting the excess or duplication. *In re Continental Illinois,* 572 F.Supp. at 935.

| Attorney | Reas. Hours | Reas. Rate | Lodestar |
|---|---|---|---|
| Parker | 223.75 | $115.00 | $ 25,731.25 |
| Guinier | 31.4 | $105.00 | $ 3,297.00 |
| Reed | 271.8 | $105.00 | $ 28,539.00 |
| Bixler | 133 | $100.00 | $ 13,300.00 |
| Issach. | 262.5 | $ 90.00 | $ 23,625.00 |
| Karlan | 6.7 | $ 80.00 | $ 536.00 |
| Hanrahan | 271.32 | $ 80.00 | $ 21,705.60 |
| **TOTAL ATTORNEY LODESTAR** | | | **$116,733.85** |

| Paralegal Lw.Stdnt. | Reas. Hours | Reas. Rate | Lodestar |
|---|---|---|---|
| Fisher | 266.47 | $ 35.00 | $ 9,326.45 |
| Gill | 129.3 | $ 35.00 | $ 4,525.50 |
| Krislov | 199 | $ 35.00 | $ 6,965.00 |
| Wilkinson | 2.7 | $ 35.00 | $ 94.5 |
| Schanzer | 74 | $ 35.00 | $ 2,590.00 |
| Bauer | 4 | $ 35.00 | $ 140.00 |
| Moore | 136.4 | $ 35.00 | $ 4,774.00 |
| Prinz | 0 | $ 35.00 | $ 0 |
| James | 0 | $ 35.00 | $ 0 |
| Secoy | 0 | $ 35.00 | $ 0 |
| **TOTAL PARA/STUDENT LODESTAR** | | | **$ 28,415.45** |
| **TOTAL ATTY/PARALEGAL LODESTAR** | | **=** | **$145,149.30** |

The court will now apply the other *Johnson* factors to determine whether this amount should be adjusted. *See Adolph Coors, Inc.*, 624 F.2d at 583.

### 6) *Remaining Johnson Factors*

**a. Novelty and Difficulty of the Question Involved**

The novelty and difficulty of the issues were taken into account by the court when viewing the reasonableness of the hours expended on the litigation. Accordingly, no adjustment should be made on the basis of this factor.

**b. Skill Required to Handle the Matter Properly**

Mr. Parker and the other counsel appear to possess the experience and skill required to handle this litigation; all enjoy a fairly good reputation. Mr. Parker, who has extensive experience in voting rights, certainly demonstrated the requisite skill and expertise which the court would expect in the courtroom and certainly handled the litigation adequately. However, the court has previously considered counsels' abilities in determining the hourly rate. Therefore, the court is of the opinion that no adjustment is warranted on this basis.

**c. Possible Loss of Clients of Employment**

The attorneys maintain that their representation in this matter precluded them from either accepting new legal matters or working on other matters they are handling. Although the court is sure that is the case, the attorneys are being adequately compensated for the time reasonably expended on the case by the court's lodestar amount. No adjustment will be made on the basis of this factor.

**d. Amount Involved and Benefit to Client**

In their initial challenge of Mississippi's voter registration laws in effect at the time, plaintiffs succeeded in establishing a violation of § 2 of the Voting Rights Act. 42 U.S.C.1973(a). The subsequent challenges lodged against curative legislation, however, were rejected by this court and the court of appeals; plaintiffs made no

further advances after the initial success in stage one of the litigation. Plaintiffs' success is reflected in the lodestar amount; no upward or downward adjustment to the figure will be made.

e. The Contingency or Uncertainty of Compensation

No adjustment will be made on the basis of this factor.

f. Nature of the Court Before Which the Case was Tried

The court is of the opinion that no adjustment should be made for this factor.

g. Time Limits Imposed by the Clients or the Circumstances

Both sides benefitted from the court granting motions for extensions and enlargement of time. If anything, time limitations were more relaxed than the normal time limitations imposed in the majority of cases. Therefore, the court will not adjust the lodestar amount on the basis of this factor.

h. Undesirability of the Case

No adjustment is warranted on the basis of this factor.

i. Nature and Length of the Professional Relationship With Client

The lodestar amount should not be affected by this factor.

j. Awards in Similar Cases

The lodestar amount is in line with previous awards by this court.

*Expenses*

Plaintiffs request expenses in the amount of $92,264.28. None of the attorneys have provided the court with documentation regarding the expenses claimed. Neither have the parties detailed the costs associated with their travel and accommodations. Since the parties have not detailed the expenses incurred nor elaborated upon their necessity or reasonableness, the court will not allow all of the expenses requested, but only what the court believes are reasonable expenses; all reasonable expenses which would be billed to a fee-paying client should be allowed. *See Loewen v. Turnipseed*, 505 F.Supp. 512, 517 (N.D.Miss.1980).

For the services of experts Dr. Allan J. Lichtman, Dean of the College of Arts and Sciences at American University, Washington, D.C. and Dr. William P. O'Hare, a demographer, *PUSH*, 674 F.Supp. at 1252–53, plaintiffs request $28,557.21, but the amount is largely unrecoverable. Under *Woodworkers*, 790 F.2d 1174, "the new Fifth Circuit rule is that, in civil rights actions, a losing party may not be taxed for an expert witness' services in excess of the $40.00 per day rate that is authorized by 28 U.S.C. § 1821 for in court testimony." *Shipes*, 685 F.Supp. at 614. Given the above authority, the request of $28,557.21 in expert witness fees is denied. Instead, the court will allow $260.00 for expert costs, leaving a subtotal of $63,967.07 in litigation expenses request. The remaining balance of expenses is attributable to: research, copying, overnight mail/courier service, travel, meals, lodging, postage, long distance telephone, depositions, and lay witnesses.

| Travel, etc., | $12,045 | (40% of the amount requested) |
|---|---|---|
| L/D Telephone | $ 1,896 | |
| Copying | $ 7,667[32] | |
| Postage | $ 520 | |
| Overnight Mail/ Courier Services [33] | $ 1,600 | |
| Legal Research [34] | 0 | |
| Total Expenses | $23,728 | |

32. The court believes $12,109.90 is an unreasonable amount; the court believes that the allowed amount reflects a reasonable photocopying expense.

33. The expenses claimed for overnight/express mail are excessive; part of the excess includes costs incurred in distributing Press Packets/Kits.

34. The attorneys have been adequately compensated in the lodestar amount for the time expended on legal research. The court cautions counsel to exercise fiscal restraint. Charges for excessive and unnecessary computer legal research are not compensable expenses, especially in a contingency fee arrangement. Furthermore, approving such expenditures could be viewed as underwriting a portion of counsels' law library. Therefore, the expenses are excluded.

### III. SUMMARY OF CONCLUSIONS

Plaintiffs are entitled to an award of attorneys' and paralegal fees of $145,-149.30 and expenses in the amount of $23,-728. An order in accordance with this memorandum opinion will be entered.